OPINION
{¶ 1} Defendant-appellant, Robert Adams ("Adams"), appeals his conviction and sentence in the Lake County Court of Common Pleas on two counts of aggravated vehicular homicide, second degree felonies in violation of R.C. 2903.06(A)(1), each count carrying a repeat violent offender specification under R.C. 2941.149, and one count of driving while under the influence of alcohol or drugs, a first degree misdemeanor in violation of R.C. 4511.19(A)(1). For the following reasons, we affirm Adams' conviction and sentence.
 {¶ 2} A jury trial was commenced against Adams on May 14, 2003. On Saturday, October 26, 2002, at about 2:40 p.m., witnesses observed the Ford Mustang Adams was operating backing out into the westbound lanes of Route 20, a four-lane highway, in Madison Township. Adams hesitated a moment after backing out and then proceeded westbound in the curb lane on Route 20. Adams went through a red light at the intersection of Burns Road. After passing the light, Adams swerved twice, crossing over three lanes of traffic into the eastbound lanes. Witnesses testified that Adams appeared to be driving the posted speed limit of 45 miles per hour, but that his driving was noticeably erratic.
 {¶ 3} At the same time, Kenneth Buzbee ("Buzbee") was driving a Volkswagen Jetta eastbound on Route 20. Buzbee's wife was sitting in the front passenger seat and his parents, Robert and Evelyn Buzbee ("Robert" and "Evelyn"), were sitting in the back seat. As Adams drew nearer, Buzbee brought the Volkswagen Jetta to a complete stop in the eastbound curb lane. As Adams was passing Buzbee's vehicle, the Mustang veered into the eastbound lanes a third time and collided with Buzbee's vehicle.
 {¶ 4} Evelyn died at the scene, but not immediately, from skeletal, visceral, and vascular injuries caused by blunt impact to the chest area. Robert suffered broken ribs, a bruised and collapsed lung, and other contusions and lacerations. Robert remained in chronically critical condition as a result of his injuries and in a depressed state as a result of his wife's death until his death on December 17, 2002.
 {¶ 5} Madison Township police officers searched the Mustang Adams was operating and found two crack pipes, chore boy scouring pads, a pair of scissors, and a small pocket-knife. Cocaine residue was found on both crack pipes. One of the crack pipes was stuffed with part of a chore boy, which are used as filters in crack pipes.
 {¶ 6} Adams was life-flighted to MetroHealth Medical Center in Cleveland. At about 4:50 p.m., samples of Adams' blood and urine were tested by Dr. Brenda Nicholes ("Dr. Nicholes"), director of the toxicology lab at MetroHealth. The test of Adams' urine revealed the presence of at least a thousand nanograms of cocaine per liter of urine and a cocaine metabolite, called benzoylecgonine or BE. Adams' blood was only tested for the presence of alcohol, of which none was detected. Dr. Nicholes opined that the cocaine had been ingested within three or four hours of the sample being taken.
 {¶ 7} Dr. Robert Powers ("Dr. Powers"), chief toxicologist at the Hamilton County Coroner's Office and a consultant for the Lake County Crime Lab, also reviewed the results of the testing of Adams' blood and urine. According to Dr. Powers, a minimum of a thousand nanograms of cocaine in Adams' urine is an extremely high level of cocaine ("a walloping amount") and indicates a minimal passage of time between the ingestion of the cocaine and the collecting of the urine sample. Dr. Powers opined that Adams had ingested the cocaine between two and four hours prior to the urine being tested. Since Adams' urine was tested approximately two hours after the collision, Dr. Powers testified that he would expect Adams to have been under the influence of cocaine at the time of the collision.
 {¶ 8} The jury found Adams guilty of two counts of second-degree aggravated vehicular homicide with repeat violent offender specifications, one count of driving while under the influence of alcohol or drugs, and two counts of third-degree vehicular homicide.
 {¶ 9} On June 4, 2003, the trial court held a sentencing hearing. Pursuant to R.C. 2941.149, the court found Adams to be a repeat violent offender. The court sentenced Adams to two consecutive, mandatory eight-year prison terms for each second-degree aggravated vehicular homicide count, two consecutive five-year prison terms for each of the repeat violent offender specifications, and a six-month prison term for the driving while under the influence of alcohol or drugs count, to be served concurrent with the other sentences. Adams' two third-degree aggravated vehicular homicide counts were merged with the other charges for purposes of sentencing. Adams' total term of imprisonment is twenty-six years. The court also permanently revoked Adams' driver's license.
 {¶ 10} Adams timely appeals his conviction and sentence, raising the following assignments of error:
 {¶ 11} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 12} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 13} "[3.] The trial court erred to the prejudice of the defendant-appellant when it ordered an additional prison term on the repeat violent offender specification in violation of R.C.2929.14(D)(2)(b)(i) and (ii) and the defendant-appellant's right to be free from double jeopardy as guaranteed by the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 14} "[4.] The trial court erred to the prejudice of the defendant-appellant when it imposed an additional prison term on the repeat violent offender specification without making the requisite findings.
 {¶ 15} "[5.] The trial court erred by sentencing the defendant-appellant to the maximum term of imprisonment.
 {¶ 16} "[6.] The trial court erred to the prejudice of the defendant-appellant when it ordered consecutive sentences.
 {¶ 17} "[7.] The trial court violated appellant's rights to equal protection and due process of law under the Fifth andFourteenth Amendments to the U.S. Constitution and under Sections 2, 10 and 16, Article I of the Ohio Constitution when it sentenced him contrary to R.C. 2929.11(B)."
 {¶ 18} Adams' first two assignments of error challenge the sufficiency and the manifest weight of the evidence. "Sufficiency" is "a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e., "whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 319; Statev. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 19} Weight of the evidence, by contrast, involves "the inclination of the greater amount of credible evidence." Thompkins,78 Ohio St.3d at 387 (citation omitted) (emphasis sic). Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982),70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror."Thompkins, 78 Ohio St.3d at 387. The reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 20} It is well-settled that a criminal defendant must move for acquittal under Crim.R. 29 at trial in order to preserve the right to appeal on the basis of the sufficiency of the evidence. Willoughby v.Wutchiett, 11th Dist. No. 2002-L-165, 2004-Ohio-1177, at ¶ 7 (citation omitted). When a defendant makes a Crim.R. 29 motion, he challenges the sufficiency of the evidence introduced by the state. Thus, in order to preserve the right to appeal the sufficiency of the evidence, a defendant must comply with Crim.R. 29 governing motions for acquittal. Therefore, the defendant must move for acquittal at the close of the state's case and also at the close of the defendant's case. See, generally, State v.Kaseda, 11th Dist. No. 2002-L-002, 2004-Ohio-1074, at ¶ 32; State v.Barksdale (June 22, 2001), 11th Dist. No. 2000-L-088, 2001 Ohio App. LEXIS 2808, at *3; State v. Perry (Aug. 29, 1997), 11th Dist. No. 94-T-5165, 1997 Ohio App. LEXIS 3884, at *27; State v. Roe (1989),41 Ohio St.3d 18, 25.
 {¶ 21} In the present case, Adams failed to make his motion at the close the state's case. Since Adams' trial counsel only made a Crim.R. 29 motion at the close of his own case, Adams waived any error relating to the sufficiency of the evidence underlying his convictions. Therefore, we will only consider whether Adams' convictions are against the manifest weight of the evidence.
 {¶ 22} In order to convict Adams of aggravated vehicular homicide, the prosecution bore the burden of proving, beyond a reasonable doubt, that Adams, "while operating * * * a motor vehicle * * * cause[d] the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code [driving while under the influence of alcohol or drugs] [or] [r]ecklessly." R.C.2903.06(A)(1)(a) and (2)(a). "Recklessly" is defined as when a person, "with heedless indifference to the consequences, * * * perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).
 {¶ 23} Adams maintains that the results of analysis performed on his urine did not provide a basis for finding that he was under the influence of cocaine at the time of the collision. Adams objects that cocaine must be present in the blood, not the urine, before it can affect a person's behavior because it is the blood that reaches a person's brain. Adams also relies on Dr. Powers' testimony that inferences about a drug's effect on a person are generally limited to the results of blood tests, rather than urine tests.
 {¶ 24} Adams misconstrues the import of Dr. Powers' testimony. When Dr. Powers testified that inferences about cocaine's effect on a person are generally made from the results of blood tests, Dr. Powers was describing the "general practice" in his laboratory. This testimony does not support Adams' objection that evidence of the effects of cocaine cannot be derived from a urine test. Dr. Powers explained that it was a "very rare occurrence" to find the parent drug cocaine in a person's urine because cocaine metabolizes so quickly in the bladder.
 {¶ 25} Dr. Powers affirmatively stated that it is possible to draw conclusions about the presence of cocaine in the blood, and thus whether a person is under the influence of cocaine, from the presence of cocaine in his urine: "I have made, drawn a conclusion based on the presence of cocaine [in the urine] and not as a function of the concentration in the urine but the fact that it was detected in the urine at all, what that means is that it was in the blood because urine is essentially a filtrate of the blood so the fact that it was present in the urine tells me that it was in the blood. The fact that there was so much there tells me that * * * the time of ingestion is approximate to the collection of the urine." We hold that the results of the test of Adams' urine were credible evidence that Adams was driving under the influence of cocaine.
 {¶ 26} Finally, Adams argues that the prosecution's evidence failed to prove when the cocaine was ingested. Again, we disagree.
 {¶ 27} Based on the results of the urine analysis, Dr. Nicholes and Dr. Powers both testified that Adams had ingested cocaine less than four or five hours prior to the collision. Given that Adams' urine was collected two hours after the collision, this evidence establishes that Adam ingested the cocaine, at the most, three hours prior to the collision and well within the period that the cocaine could affect Adams' ability to operate a vehicle.
 {¶ 28} The prosecution introduced additional, circumstantial evidence that Adams was under the influence of cocaine. Two crack pipes were found in the Mustang which, Adams' mother testified, were not present when she loaned him the car the night before. Dr. Powers testified that Adams' erratic driving was indicative of cocaine's effect on the central nervous system.
 {¶ 29} Construing this evidence in a light most favorable to the prosecution, we hold that Adams' convictions were not against the manifest weight of the evidence.
 {¶ 30} Adams also argues that the prosecution failed to prove that he acted "recklessly" in causing the deaths of Robert and Evelyn Buzbee. Specifically, Adams claims that he did not perversely disregard a known risk because it was not known that he would be in an accident and cause two people's death. Although the prosecution does not have to prove both that Adams was under the influence of cocaine and that he acted recklessly, we will nevertheless consider Adams' argument.
 {¶ 31} It is well-established that "[a] licensed driver is charged with knowledge that driving while under the influence is against the law, and creates a substantial risk to himself and others." State v.Hennessee (1984), 13 Ohio App.3d 436, 439; accord State v. Ward, 4th Dist. No. 03CA2703, 2003-Ohio-5847, at ¶ 9; State v. Broomfield (Sept. 4, 2001), 10th Dist. No. 00AP-1420, 2001 Ohio App. LEXIS 3912, at *10-*11; State v. Flanek (Sept. 2, 1993), 8th Dist. No. 63308, 1993 Ohio App. LEXIS 4282, at *13-*15; State v. Vetter (Aug. 18, 1993), 9th Dist. No. 2213, 1993 Ohio App. LEXIS 4059, at *7; State v. Spencer (Nov. 2, 1990), 11th Dist. No. 89-P-2140, 1990 Ohio App. LEXIS 4808, at *11-*12. Although these cases dealt with driving under the influence of alcohol, we hold that a defendant is likewise charged with knowledge that driving while under the influence of cocaine constitutes credible evidence that a defendant is acting recklessly.
 {¶ 32} In the present case, the finding that Adams was under the influence of cocaine at the time of the collision was not against the weight of the evidence. There was also evidence that Adams was unable to control his vehicle at any time after witnesses observed him backing out into Route 20; that Adams crossed over three lanes of traffic before reaching the Buzbee's vehicle; that the Buzbee's vehicle had come to a complete stop as Adams approached it; and that Adams made no attempt to brake prior to impacting the Buzbee's vehicle. This evidence supports the jury's finding of recklessness. Spencer, 1990 Ohio App. LEXIS 4808, at *12 ("evidence that appellant was driving under the influence is sufficient to support a finding of reckless[ness]").
 {¶ 33} Adams' first two assignments of error are without merit.
 {¶ 34} Under the third assignment of error, Adams argues that the trial court's imposition of additional prison terms under Ohio's repeat violent offender specification violates the double jeopardy provisions of the United States and Ohio Constitutions. Adams concedes that this court has previously rejected this argument in State v. Crain, 11th Dist. No. 2001-L-147, 2003-Ohio-1204, but raises it in order to preserve the issue for further appeal.
 {¶ 35} Adams' third assignment of error is without merit.
 {¶ 36} We will next consider Adams' fifth assignment of error challenging the trial court's decision to impose the maximum sentence of eight years on each count of aggravated vehicular homicide, second degree felonies. R.C. 2929.14(A)(2).
 {¶ 37} An appellate court reviews a felony sentence under a clear and convincing evidence standard of review. R.C. 2953.08(G)(2). An appellate court may not disturb a sentence unless the court "clearly and convincingly finds" that "the record does not support the sentencing court's findings," or that "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 38} Pursuant to R.C. 2929.14(C), a "court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." A court "shall impose the longest prison term from the range of terms authorized for [an] offense" if the court finds the defendant is a repeat violent offender and, in committing the current offense, has "caused any physical harm * * * that involved substantial permanent incapacity or substantial permanent disfigurement of a person." R.C. 2929.14(D)(2)(a). "Accordingly, a maximum sentence is properly imposed if the record reveals a proper R.C. 2929.14(C) finding." Statev. Evans, 102 Ohio St.3d 240, 2004-Ohio-2659, at ¶ 16.
 {¶ 39} In the present case, the trial court properly found Adams was a repeat violent offender, as will be discussed in greater detail under Adams' supplemental assignment of error. Therefore, the trial court properly imposed the maximum sentence upon Adams as a repeat violent offender without having to make additional findings under R.C. 2929.14(C).
 {¶ 40} Adams' fifth assignment of error is without merit.
 {¶ 41} In the fourth assignment of error, Adams argues that the trial court erred by imposing additional, five-year prison terms on each aggravated vehicular homicide count for being a repeat violent offender. Adams claims the trial court failed to make the statutorily required findings necessary to impose additional prison terms. We disagree.
 {¶ 42} Pursuant to the repeat violent offender provision of Ohio's sentencing statute, a court may impose an additional prison term of up to ten years upon a repeat violent offender who has already received the maximum authorized sentence "if the court finds that * * * [t]he terms so imposed are inadequate to punish the offender and protect the public from future crime * * * [and that] [t]he terms so imposed are demeaning to the seriousness of the offense * * *." R.C. 2929.14(D)(2)(b).
 {¶ 43} At the sentencing hearing, the trial court stated that "the minimum sentence," rather than "the terms so imposed," i.e., the maximum sentence, "would demean the seriousness of the offense and would not adequately protect the public from future crime by the offender." The court's misstatement is harmless error since the court understood that it was imposing additional time under R.C. 2929.14(D)(2), rather than a greater than minimum sentence. Adams had served multiple prison terms prior to the instant offenses and, as a repeat violent offender, had to be sentenced to the statutory maximum; therefore, the court had no reason to even consider imposing the minimum sentence. Moreover, in the judgment entry of sentence, the court correctly stated that it was the "maximum basic prison term" that was demeaning to the seriousness of Adams' offenses. We hold that the trial court properly found that the "terms so imposed" were demeaning to the seriousness of Adams' conduct. Cf. Statev. Stanley, 8th Dist. No. 81628, 2003-Ohio-3224, at ¶ 16 (holding that R.C. 2929.14(D)(2)(b) (i) and (ii) were satisfied where the trial court found that "the shortest prison term will demean the seriousness of defendant's conduct and will not adequately protect the public").
 {¶ 44} The court also considered the seriousness and recidivism factors contained in R.C. 2929.12 as required by the statute. The court's findings relative to the recidivism factors under R.C. 2929.12(D) have been quoted above. In regard to the seriousness factors under R.C.2929.12(B), the court found "that the injury was exacerbated by the physical and mental condition of the [victims] and their age which was over 65. That the victims suffered serious physical, psychological and economic harm not only to the death of two persons but the other two persons that were in the motor vehicle that were related [to the victims] certainly suffered all those things as a result of your actions. The Court finds that you were under the influence of cocaine and that you have convictions for similar offenses and you had a similar offense preceding this in which you struck a tree but you were using cocaine and were operating a motor vehicle and that did not seem to — * * * did not teach you a lesson." Cf. R.C. 2929.12(B)(1) (exacerbation of the injury suffered due to the victim's mental condition or age) and (B)(2) (the victim suffered serious physical and psychological harm).
 {¶ 45} The trial court found that there were no mitigating factors under R.C. 2929.12(C) and no factors indicating that recidivism is less likely under R.C. 2929.12(E).
 {¶ 46} Adams further argues that the trial court did not expressly state that the factors indicating a likelihood of recidivism outweighed the factors indicating that recidivism was less likely and failed to state that factors were present indicating that Mr. Adams' conduct was more serious than conduct normally constituting the offense and that those factors outweighed the factors indicating that the conduct was less serious than conduct normally constituting the offense.
 {¶ 47} We agree with Adams that a trial court's decision to impose an additional prison term for a repeat violent offender is similar to the decision to impose consecutive sentences in that the trial court must not only make the statutorily required findings, but also give reasons for making those findings. Cf. R.C. 2929.19(B)(2)(c). In the present case, the trial court demonstrated that it performed the appropriate analysis of weighing the seriousness and recidivism factors against the mitigating factors by considering the sentencing factors contained in R.C. 2929.12. Cf. State v. Crain, 11th Dist. No. 2001-L-147, 2003-Ohio-1204, at ¶¶ 74-75 (the trial court conducted a similar analysis by making the findings required by R.C. 2929.14(D)(2)(b)(i) and (ii) and considering the seriousness and recidivism factors under R.C. 2929.12).
 {¶ 48} Contrary to Adams' argument that the trial court focused solely on the fact that two deaths occurred as a result of Adams' conduct, the court specifically cited to Adams' history of drug abuse, his prior convictions, a prior instance of Adams being involved in an auto accident while under the influence of cocaine, his lack of genuine remorse, the advanced age of Robert and Evelyn, the fact that Robert and Evelyn both suffered greatly, and the fact that Robert and Evelyn were Buzbee's, the driver of the Jetta, parents.
 {¶ 49} Adams' fourth assignment of error is without merit.
 {¶ 50} In Adams' sixth assignment of error, he argues the record did not support the trial court's decision to impose consecutive sentences for two counts of aggravated vehicular homicide.
 {¶ 51} "A court may not impose consecutive sentences for multiple offenses unless it `finds' three statutory factors. R.C. 2929.14(E)(4). First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Id. Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Third, the court must find
the existence of one of the enumerated circumstances in R.C.2929.14(E)(4)(a) through (c)." State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, at ¶ 13 (emphasis sic) (footnote omitted). Pursuant to R.C. 2929.14(E)(4), the court must find that "[t]he offender committed one or more of the multiple offenses while the offender was * * * under a sanction * * * [; that] [a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused * * * was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct[; or that] [t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 52} When imposing consecutive sentences for multiple offenses under R.C. 2929.14, the trial court is also required to "make a finding that gives * * * its reasons for imposing consecutive sentences." R.C.2929.19(B)(2)(c).
 {¶ 53} Adams concedes that the trial court made the statutorily required findings on the record, but maintains that, in explaining its reasoning, the court focused on the fact that Adams caused the death of the victims and was under the influence of cocaine at the time of the collision. As discussed under the fourth assignment of error, the court's reasons for imposing consecutive sentences clearly rest on more than the facts that two persons died and that Adams was under the influence of cocaine. The overriding motive for the court's decision was to protect the public from future crime by Adams. R.C. 2929.11. The court focused on Adams' disregard for the lives of others in deciding to drive under the influence of cocaine, the fact that Adams was free on bond on similar charges when he committed these crimes, Adams' prior convictions for possession and trafficking, and Adams' persistence in this course of conduct despite past opportunities to correct his drug problem. The harm caused by Adams' offenses has been discussed above. We hold that there is clear and convincing evidence to support the findings necessary to impose consecutive sentences.
 {¶ 54} Adams' sixth assignment of error is without merit.
 {¶ 55} In the seventh assignment of error, Adams argues the trial court erred by imposing a sentence upon him that was not consistent with similarly situated criminals who committed similar crimes and that his twenty-six year prison sentence is not proportional to the crimes committed. Adams relies upon the express purpose of Ohio felony sentencing that sentences "shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders." R.C.2929.11(B). Adams also relies upon the Equal Protection Clauses of the United States and Ohio Constitutions.
 {¶ 56} The overriding purposes of felony sentencing in Ohio "are to protect the public from future crime by the offender * * * and to punish the offender." R.C. 2929.11.(A). In addition to being consistent with other sentences imposed for similar crimes, a felony sentence must be "reasonably calculated" to achieve the overriding purposes of felony sentencing and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim." R.C. 2929.11(B).
 {¶ 57} This court has stated that, although "a trial court is required to engage in the analysis set forth by R.C. 2929.11(B) to ensure the consistency of sentences," a court is not required "to make specific findings on the record" in this regard. State v. Newman, 11th Dist. No. 2002-A-0007, 2003-Ohio-2916, at ¶ 10. The trial court possesses "broad discretion to determine the most effective way to comply with the purposes and principles of sentencing within the statutory guidelines."State v. Smith (June 11, 1999), 11th Dist. No. 98-P-0018, 1999 Ohio App. LEXIS 2632, at *8.
 {¶ 58} This court is aware of no other instance of a defendant receiving a twentysix year prison sentence for multiple counts of aggravated vehicular homicide. This fact alone, however, is not determinative of the issue of whether Adams' sentence was consistent or proportional to sentences for similar crimes.
 {¶ 59} Adams cites to numerous cases where sentences of less than twenty-six years were imposed for vehicular homicide. State v. Williams
(Nov. 30, 2000), 6th App. Nos. L-00-1027, L-00-1028, 2000 Ohio App. LEXIS 5575; State v. Collignon (Mar. 31, 1998), 6th App. No. L-97-1189, 1998 Ohio App. LEXIS 1219; State v. Alfieri (1998), 132 Ohio App.3d 69. Adams cites to several cases from this court imposing sentences for aggravated vehicular homicide ranging from one year to eleven and a half years. State v. Bellamy, 11th Dist. Nos. 2001-L-138, 2001-L-139, 2002-Ohio-7137; State v. Dwyer (Aug. 10, 2001), 11th Dist. No. 2000-L-090, 2001 Ohio App. LEXIS 3537; State v. Fitzmaurice (Dec. 3, 1999), 11th Dist. No. 98-L-199, 1999 Ohio App. LEXIS 5780.
 {¶ 60} Our review of aggravated vehicular homicide cases reveals a sentencing range of five to fifteen years. State v. Tomkalski, 11th Dist. No. 2003-L-097, 2004-Ohio-5624 (five-year prison term); State v.Sneed, 8th App. No. 80902, 2002-Ohio-6502 (fifteen-and-one-half year prison term); State v. Abbott, 12th App. No. CA2001-10-093, 2002-Ohio-6278 (twelve-year prison term).
 {¶ 61} There are several important distinctions between these cases and the present case. The first is that in the majority of these cases, the degree of aggravated vehicular homicide at issue was third or fourth degree. Thus, the maximum sentence for an individual count in these cases was five years. R.C. 2929.14(A)(3). See Abbott, 2002-Ohio-6278, at ¶¶ 14-18; Bellamy, 2002-Ohio-7137, at ¶ 10.
 {¶ 62} The second important distinction is that only in Sneed andWilliams were the defendants convicted of two counts of aggravated vehicular homicide. In Sneed, where the total prison term was fifteen and a half years, the trial court imposed less than the maximum sentence for two counts of third-degree aggravated vehicular homicide. 2002-Ohio-6502, at ¶ 19. In Williams, the Sixth District reversed the imposition of consecutive three-year sentences imposed for third-degree aggravated vehicular homicide. The Court of Appeals noted the defendant was not intoxicated at the time of the accident, but was merely engaged in the misdemeanor traffic offense of speeding. 2000 Ohio App. LEXIS 5575, at *18. Adams' culpability, in contrast, is much greater than that of the defendant in Williams as Adams made a conscious decision to drive while under the influence of cocaine.
 {¶ 63} The most important distinction between the present case and the ones cited is that Adams was adjudicated a repeat violent offender. This factor is not present in the other cases and is decisive for evaluating the proportionality of Adams' sentence. Without the repeat violent offender specification, Adams' sentence would have been sixteen years, the maximum sentence for each count served consecutively. Several of the cited cases similarly imposed the maximum, consecutive sentences allowed by the charges. See Collignon, 1998 Ohio App. LEXIS 1219; Sneed,
2002-Ohio-6502; Abbott, 2002-Ohio-6278. Moreover, a sixteen-year sentence is not inconsistent with the fifteenand-one-half year sentence in Sneed,
the most analogous of the cited cases. Since Adams was adjudicated a repeat violent offender, however, the trial court was permitted to impose additional prison terms of up to ten years. R.C. 2929.14(D)(2)(b).
 {¶ 64} The effect of the trial court's decision to impose additional prison terms is that Adams faces possible incarceration until he is about sixty-years old. The trial court's purpose is clearly to incapacitate an offender whom the trial court has determined to pose the greatest risk of committing future, violent crime. We find the court's sentence to be consistent with the purposes of felony sentencing, i.e., to protect the public from future crime, and to be proportional to the achievement of that goal, inasmuch as Adams would not pose the same threat of violent behavior after the age of sixty. Cf. State v. Smith (2000),136 Ohio App.3d 343 (upholding an eight-year sentence for second-degree felonious assault with an additional nine years imposed under a repeat violent offender specification and three years for a firearm specification).
 {¶ 65} Adams' seventh assignment of error is without merit.
 {¶ 66} By leave of this court granted on January 6, 2005, Adams raises the following supplemental assignment of error: "The trial court erred when it sentenced the defendant-appellant to maximum and consecutive sentences with additional time for a repeat violent offender specification based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant's state and federal constitutional rights to trial by jury."
 {¶ 67} In Apprendi v. New Jersey (2000), 530 U.S. 466, 490, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely v. Washington (2004), 524 U.S. ___, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403, 413, the Court further held that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected inthe jury verdict or admitted by the defendant." (Emphasis sic.) The Supreme Court affirmed these principles in United States v. Booker
(2005), 125 S.Ct. 738.
 {¶ 68} We first consider whether the trial court violated Adams' right to trial by jury under Apprendi and Blakely by ordering his sentences to be served consecutively. As stated above, a court may not impose consecutive sentences unless it makes certain findings. R.C. 2929.14(E)(4) (the sentencing court must find: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public by the offender; (3) one of the circumstances enumerated in R.C.2929.14(E)(4)(a) through (c)).
 {¶ 69} Although the findings authorizing the trial court to impose consecutive sentences were not determined by a jury, this court has previously held that Apprendi and Blakely do not apply to the decision to impose consecutive sentences. State v. Taylor, 158 Ohio App.3d 597,2004-Ohio-5939, at ¶ 25 (citations omitted); State v. Morales, 11th Dist. No. 2003-L-025, 2004-Ohio-7239, at ¶¶ 86-88 (citations omitted). Accordingly, we affirm the trial court's decision to impose consecutive sentences.
 {¶ 70} Next we consider whether the trial court's determination that Adams is a repeat violent offender was improper under Apprendi andBlakely. The first two counts of Adams' indictment, for aggravated vehicular homicide, contained specifications that Adams was a repeat violent offender, "having been previously convicted of Felonious Assault on November 4, 1987 in the Cuyahoga County, Ohio, Common Pleas Court in Case No. CR-216439." R.C. 2941.149(A). The Ohio Revised Code defines a repeat violent offender as "a person" who "has been convicted of or has pleaded guilty to * * * a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person" and who "previously served * * * a prison term for * * * a felony of the * * * second degree that resulted * * * in physical harm to a person." R.C. 2929.01(DD)(1) and (2).
 {¶ 71} The jury's verdict found Adams guilty of both counts of aggravated vehicular homicide "with a Repeat Violent Offender Specification as set forth in Section 2941.149 of the Ohio Revised Code." Pursuant to R.C. 2941.149(B), the court must determine Adams' status as a repeat violent offender.
 {¶ 72} At the sentencing hearing, Adams, against advice of counsel, refused to stipulate to his status as a repeat violent offender. Thereupon, the state presented evidence, in the form of police records and live witness testimony, that Adams was convicted of felonious assault for stabbing Edmond Stevenson in May 1987, that Stevenson was hospitalized as a result of his injury, that Adams received probation, and that Adams subsequently violated his probation and was imprisoned. The trial court found that Adams was a repeat violent offender and added five years to Adams' sentence for each of the two firearm specifications.
 {¶ 73} We hold that Adams was properly determined to be a repeat violent offender under Apprendi, Blakely, and Booker. Adams' status as a repeat violent offender depended on his prior conviction of "a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person." R.C.2929.01(DD)(1). In 1987, Adams pled guilty to felonious assault, a felony of the second degree. In doing so, Adams admitted the elements of the crime of felonious assault, in particular that he "[c]ause[d] serious physical harm to another." R.C. 2903.11(A)(1). The record further shows that Adams served a prison term of three to fifteen years for that conviction.[1] Therefore, Adams was determined to be a repeat violent offender on the basis of his prior conviction for felonious assault, permissible under the Sixth Amendment. Apprendi, 530 U.S. at 490 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").
 {¶ 74} Once Adams was determined to be a repeat violent offender, the trial court was required to impose the maximum sentence of eight years for aggravated vehicular homicide. R.C. 2929.14(C) provides that a court "may impose the longest prison term authorized for the offense * * * upon certain repeat violent offenders in accordance with division (D)(2) of this section." Cf. R.C. 2929.14(D)(2)(a) ("[i]f an offender * * * is convicted of or pleads guilty to a specification of the type described in section 2941.149 * * * that the offender is a repeat violent offender, the court shall impose a prison term * * * that may be the longest term in the range"). Division (D)(2) of R.C. 2929.14 provides that "[i]f the court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person * * *, the court shall impose the longest prison term from the range of terms authorized for the offense." Since the actual death of a person underlies the charge of aggravated vehicular homicide, the trial court was required to sentence Adams, as a repeat violent offender, to the maximum sentence for that charge. Evans, 2004-Ohio-2659, at ¶ 16 ("a maximum sentence is properly imposed if the record reveals a proper R.C.2929.14(C) finding").
 {¶ 75} Lastly, we consider whether the trial court's decision to impose additional five years sentences under R.C. 2929.14(D)(2)(b) violated the holdings in Apprendi and Blakely. Before the trial court may impose an additional sentence for the repeat violent offender specification, the court must find: (1) that, considering the recidivism factors under R.C. 2929.12, the maximum authorized sentence is "inadequate to punish the offender and protect the public from future crime"; and (2) that, considering the seriousness factors under R.C.2929.12, the maximum sentence is "demeaning to the seriousness of the offense." R.C. 2929.14(D)(2)(b)(i) and (ii).
 {¶ 76} In the present case, the trial court made the required findings as discussed above. In support of its finding that the maximum sentence without the repeat violent offender specification is inadequate to protect the public from future crime, the trial court cited to the facts that Adams committed the current offense while free on bail awaiting sentence or under community control sanctions for another crime, that Adams has a history of criminal convictions or delinquency adjudications, that Adams has not responded favorably to previously imposed sanctions, that Adams has a drug abuse problem relating to the current and prior offenses, that Adams has refused treatment, and that Adams has no genuine remorse.
 {¶ 77} In support of its finding that the maximum sentence is demeaning to the seriousness of the offense, the trial court noted that the suffering of the victims was exacerbated by their advanced age, that the victims suffered both physically and psychologically before they died, and that Adams had been involved in a prior accident involving cocaine.
 {¶ 78} We hold that Ohio's procedure for imposing an additional sentence for the repeat violent offender specification is constitutionally valid under Apprendi and Blakely. The findings that the maximum authorized sentence is "inadequate to punish the offender and protect the public from future crime" and that the maximum sentence is "demeaning to the seriousness of the offense" are not factual findings that were at issue in Apprendi and Blakely, but, rather, reflect judicial discretion. Cf. Apprendi, 530 U.S. 466 (sentence enhanced because of the fact that it was racially motivated); Booker, 125 S.Ct. 738 (sentence extended because of quantity of drugs); Blakely, 124 S.Ct. 2531 (sentence extended because of the fact that defendant acted with "deliberate cruelty"); Jones v. United States (1999), 526 U.S. 227 (sentence extended because of the fact that victim suffered "serious bodily injury").
 {¶ 79} The trial court is required to make its findings by applying the seriousness and recidivism factors contained in R.C. 2929.12. The statute provides that the sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). "In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing." Id. (emphasis added).
 {¶ 80} Unlike the sentencing schemes at issue in the Supreme Court cases cited above, the sentencing judge in Ohio is not required to make any particular finding of fact in order to impose an additional sentence. The sentencing judge in Ohio is required to weigh the enumerated factors, as well as any other deemed relevant, in the exercise of its discretion. Cf. State v. Murphy, 11th Dist. No. 2003-L-049,2005-Ohio-412, at ¶¶ 56-60, citing United States v. Harris (2002),536 U.S. 545, 562 (holding that the sentencing factors Ohio courts are required to consider "are interposed merely to check the judicial discretion"). The Supreme Court in Booker made clear that such a sentencing procedure is constitutionally permissible: "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. * * * For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker, 2005 U.S. LEXIS 628, at *643.
 {¶ 81} Moreover, under Apprendi, a sentencing court is entitled to rely, as the court did here, on prior convictions to increase the range of possible prison sentences. 530 U.S. at 490. Therefore, even if we considered the nature of the trial court's findings to be factual determinations, the trial court was entitled to make these determinations based on Adams' prior criminal convictions and delinquency adjudications.
 {¶ 82} For the foregoing reasons, we hold that the trial court did not violate Adams' Sixth Amendment rights by imposing an additional sentence for the repeat violent offender specification. See also, State v. Gates,
8th Dist. No. 78120, 2002-Ohio-4018, at ¶¶ 23-25 (finding Ohio's repeat violent offender statutes constitutional under Apprendi); State v.Smith, 8th Dist. No. 82710, 2004-Ohio-3479, at ¶ 92 (following Gates);State v. Stanley, 8th Dist. No. 81628, 2003-Ohio-3224, at ¶ 19 (following Gates).
 {¶ 83} Adams' supplemental assignment of error is without merit.
 {¶ 84} For the foregoing reasons, Adams' convictions and sentence in the Lake County Court of Common Pleas for two counts of aggravated vehicular homicide with repeat violent offender specifications and one count of driving while under the influence of alcohol or drugs are affirmed.
Ford, P.J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] This sentence was originally suspended but re-imposed after Adams violated his probation. Adams was imprisoned from September 9, 1988, to January 2, 1991.