OPINION
{¶ 1} Appellant, Luther T. Perry, appeals from judgments of the Lake County Court of Common Pleas, convicting him of breaking and entering and possession of criminal tools, and sentencing him to a prison term of twelve months. For the following reasons, we affirm.
 {¶ 2} On September 23, 2003, the Lake County Grand Jury indicted appellant on one count of breaking and entering, a fifth degree felony in violation of R.C. 2911.13(A), and one count of possessing criminal tools, a fifth degree felony in violation of R.C. 2923.24. Appellant waived his right to be present at the arraignment. As a result, the trial court entered a not guilty plea on his behalf.
 {¶ 3} This matter proceeded to a jury trial. The following facts and testimony were revealed at trial. On December 9, 2002, a Coca-Cola distribution warehouse in Willoughby, Ohio, was the target of a breaking and entering. The warehouse's outside entrance door had been pried open and the door's electric keypad had been destroyed. The police made impressions of the pry marks and noted evidence of scraped paint around the surrounding concrete door frame.
 {¶ 4} A closet inside the warehouse contained a safe in which money was kept. The door to the closet had also been damaged and broken into. The safe within the closet had been tampered with, but had not been opened. Also, the perpetrator left a number of distribution trucks, which were parked outside the warehouse, with their lights on, draining the trucks' batteries.
 {¶ 5} After investigating the crime scene and interviewing warehouse employees, the police suspected a disgruntled employee committed the crime. Specifically, the police noted that the break-in occurred sometime between 6:30 p.m. and 7:30 p.m. Because employee truck drivers were entering and exiting the warehouse twenty-four hours a day, the time of the break-in demonstrated that the perpetrator knew when the warehouse would be empty. The police further noted that the perpetrator had knowledge of where money was stored, as only the closet containing the safe had been disturbed. Also, the perpetrator's attempt to drain the trucks' batteries was evidence of a disgruntled employee.
 {¶ 6} The police suspected that appellant was the perpetrator. Testimony at trial revealed that appellant's part-time employment with the distributorship had ended on October 29, 2002. Appellant was upset because he was not offered full-time employment.
 {¶ 7} A warehouse manager testified that appellant was previously employed as a "checker." His job entailed receiving and checking the truck drivers' paperwork, which detailed the various deliveries. The driver's would then place the money earned from each delivery in the locked closet. In mid-October 2002, money was missing from the warehouse, and the manager testified on direct-examination that she had attempted to speak with appellant about the missing money.
 {¶ 8} Detective John Begovic ("Det. Begovic"), of the Willoughby Police Department, testified that he was involved in the investigation of the break-in. After investigating the crime scene, Det. Begovic visited appellant's residence to speak with him about the incident. When Det. Begovic arrived at appellant's residence, appellant refused to discuss the break-in. Nevertheless, Det. Begovic observed a black crowbar in plain view in the bed of appellant's truck. Paint and concrete on the crowbar were similar to the paint and concrete surrounding the outside warehouse door. Also, a brass transfer on the crowbar was similar to the brass finish on the closet door.
 {¶ 9} Ultimately, the police seized the crowbar and sent it to a crime lab for a tool-mark analysis. The analysis determined that the crowbar was the tool used during the break-in.
 {¶ 10} After receiving the results of the tool-mark analysis, Det. Begovic returned to appellant's residence and again attempted to speak with him about the break-in. Appellant agreed to speak with Det. Begovic. During the discussion, appellant admitted that the crowbar had been used during the break-in, but denied his involvement. Instead, appellant stated that he had supplied an unidentified individual with information as to where the money was located in the warehouse. When Det. Begovic inquired as to the identity of this individual, appellant refused to provide a name and ended the discussion.
 {¶ 11} Det. Begovic further testified on direct-examination that he was part of the investigation relating to the missing money of mid-October 2002. His direct-examination testimony revealed that appellant was one of the warehouse employees that he attempted to speak with in regards to the missing money.
 {¶ 12} During trial, expert-witness testimony substantiated the previous tool-mark analysis and appellant's admission that the crowbar left in his truck was used in the break-in. The testimony established that the remnants of concrete and paint left on the crowbar matched the concrete and paint on the outside warehouse door. Although there were no fingerprints available, the evidence revealed a glove print on the closet door which was consistent with a glove found in the car of appellant's girlfriend.
 {¶ 13} Based upon the evidence presented, the jury returned a unanimous verdict of guilty on the counts of breaking and entering and possession of a criminal tool. The court then entered judgment accordingly, convicting appellant on both counts, and postponed sentencing to allow the Adult Probation Department to prepare a pre-sentence investigation report.
 {¶ 14} On April 1, 2004, the court held a sentencing hearing. The court noted appellant's lengthy criminal history and inquired as to his recollection of these crimes. During the colloquy, appellant informed the court that he did not remember a recorded drug trafficking conviction. Further inquiry revealed a discrepancy with respect to appellant's stated social security number. As a result, the court continued the sentencing hearing to resolve these issues.
 {¶ 15} The sentencing hearing continued on April 5, 2004. During the hearing, appellant admitted that he was convicted of drug trafficking and that he had provided the court with incorrect information as to his social security number. The court then considered the relevant statutory factors and sentenced appellant. Appellant was sentenced to a twelve-month prison term on the breaking and entering conviction and a twelve-month prison term on the possession of criminal tools conviction, with the sentences to run concurrently.
 {¶ 16} Appellant now appeals from his conviction and sentence and sets forth the following six assignments of error for our consideration:
 {¶ 17} "[1.] The trial court erred to the prejudice of the Defendant-Appellant in determining the amount of restitution.
 {¶ 18} "[2.] The trial court erred to the prejudice of the Defendant-Appellant in violation of his constitutional rights to due process and fair trial when it allowed in evidence of prior bad acts in violation of Evid.R. 404(B), 403(A), and R.C.2945.59.
 {¶ 19} "[3.] The trial court erred when it sentenced the Defendant-Appellant to a maximum sentence based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the Defendant-Appellant's state and federal constitutional rights to trial by jury.
 {¶ 20} "[4.] The trial court ruled contrary to R.C.2929.14(C) by sentencing the Defendant-Appellant to the maximum term of imprisonment on all charges.
 {¶ 21} "[5.] The trial court erred by failing to dismiss on its own motion the charges against the Defendant-Appellant when the state failed to establish the element of control or trespass."
 {¶ 22} "[6.] The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 23} For purposes of clarity, we will address appellant's assignments of error out of order. Under his second assignment of error, appellant contends that the trial court erred by failing to exclude testimonial evidence of his alleged involvement in the mid-October 2002 incident of missing money. Specifically, appellant maintains that this evidence should have been excluded under Evid.R. 403(A) because the probative value of the testimony was substantially outweighed by its unfair prejudice. Also, he argues that the evidence should have been excluded as it violated Evid.R. 404(B)'s prohibition against evidence of other bad acts.
 {¶ 24} Appellant concedes that he failed to object to the testimony regarding the prior missing money; however, he contends that under a plain error analysis, he would not have been convicted if the testimony had been excluded.
 {¶ 25} The failure to object to the admission of evidence under either Evid.R. 403(A) or 404(B) results in a waiver of error on appeal. Evid.R. 103(A). See also, State v. Murphy,91 Ohio St.3d 516, 532, 2001-Ohio-112. However, pursuant to CrimR. 52(B), a reviewing court has the power to recognize plain errors or defects involving substantial rights which would affect the outcome of the trial, despite the failure to object. State v.Moreland (1990), 50 Ohio St.3d 58, 62. If plain error does not exist this court may not address the alleged error. State v.Copley, 10th Dist. No. 04AP-511, 2005-Ohio-896, citing State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error does not exist unless, but for the error, the outcome of the trial would have been different. Id.
 {¶ 26} Here, the testimony appellant complains of is de minimus and vague. Specifically, the testimony of the warehouse manager and Det. Begovic did not accuse appellant of stealing money during his employment; rather, the testimony merely noted that the manager and Det. Begovic had attempted to discuss the matter with appellant. At no time did the testimony implicate appellant with respect to the money that was stolen during his employment.
 {¶ 27} Nevertheless, there was abundant physical evidence which linked appellant to the instant matter. The evidence established that appellant's crowbar was used to pry open the outside warehouse door and inside closet door. In particular, the tool-mark analysis, paint samples, and concrete samples from the crowbar established that it was used to pry open the doors. Appellant also admitted that the crowbar was his and that it was used during the break-in. Moreover, the evidence of the glove print linked appellant to the crime.
 {¶ 28} Likewise, the time the crime was committed, and the crime scene itself, supported appellant as the perpetrator. The crime was committed by an individual that had knowledge of when the warehouse would be empty and where the money was stored. Due to his previous employment, appellant had the requisite knowledge of when the warehouse would be empty and that the money was stored in the closet. The evidence established that appellant committed the crime within a small time-frame in which he knew no one would be in the warehouse. He also only broke into the closet where the money was stored, while he avoided disturbing any other area in the warehouse. Testimony at trial established he was upset that his temporary position was not made a permanent position. The evidence of the truck lights being left on to drain the batteries is evidence that appellant, as a disgruntled employee, committed the crime. Thus, this circumstantial evidence further implicated appellant.
 {¶ 29} Accordingly, because there was abundant evidence by which the jury could convict appellant, we cannot find that, but for the alleged error, the outcome of the trial would have been different. Thus, because plain error does not exist we are precluded from further addressing appellant's alleged evidentiary errors. Appellant's second assignment of error is without merit.
 {¶ 30} Under his fifth assignment of error, appellant argues that the court erred by failing to dismiss the jury verdict, on its own motion, because the state failed to establish the elements necessary for the convictions. Appellant concedes that he failed to move for acquittal under Crim.R. 29(A) at the close of the state's case or at the end of his case. But appellant maintains that his failure to raise a Crim.R. 29(A) motion does not waive a sufficiency argument on appeal.
 {¶ 31} Generally, a defendant's failure to raise an alleged error with the lower court acts to waive the error on appeal. However, the Ohio Supreme Court has held that a defendant's not guilty plea preserves an argument relating to the sufficiency of the evidence for appeal. State v. Jones, 91 Ohio St.3d 335,346, 2001-Ohio-57. See, also, State v. Carter,64 Ohio St.3d 218, 223, 1992-Ohio-127. Thus, appellant's failure to move for acquittal did not waive his sufficiency argument on appeal. See, e.g., State v. Shadoan, 4th Dist. No. 03CA764,2004-Ohio-1756, at ¶ 16; Mayfield Hts. v. Molk, 8th Dist. No. 84703, 2005-Ohio-1176.
 {¶ 32} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 33} The state supports a conviction with sufficient evidence either through direct evidence, circumstantial evidence, or both. State v. Waddy (1992), 63 Ohio St.3d 424, 430. The probative values of circumstantial evidence and direct evidence are identical. Jenks at 272.
 {¶ 34} To convict appellant of breaking and entering, the state was required to show sufficient evidence of the following, per R.C. 2911.13(A):
 {¶ 35} "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."
 {¶ 36} Here, the state provided sufficient evidence to establish that appellant entered the unoccupied warehouse, without permission to do so, and used force to pry open the entrance door of the warehouse. Also, the state presented evidence that appellant attempted to break open the interior closet which housed the safe, to steal the money within. Accordingly, the state provided sufficient evidence as to the breaking and entering conviction.
 {¶ 37} Possession of criminal tools is established under R.C.2923.24, to wit: {¶ 38} "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."
 {¶ 39} The state showed evidence that the crowbar found in appellant's truck was used to pry open the entrance door of the warehouse and to break into the warehouse safe. Also, appellant admitted that the crowbar was his and that it was used during the warehouse break-in, albeit by an unnamed individual. Therefore, the state also presented sufficient evidence that appellant possessed criminal tools.
 {¶ 40} Appellant's fifth assignment of error is without merit.
 {¶ 41} Under his sixth assignment of error, appellant argues that the judgment convicting him of breaking and entering was against the manifest weight of the evidence. In doing so, appellant maintains that the evidence failed to show that he was at the warehouse on the evening of the break-in.
 {¶ 42} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 43} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 44} As discussed under appellant's second assignment of error, there is abundant physical and circumstantial evidence which established appellant broke-in the warehouse. The physical evidence and appellant's admission established that appellant's crowbar, found in his truck just after the break-in, was used to pry open the outside warehouse door and inside closet door. Further physical evidence revealed that glove prints taken from the closet door linked appellant to the crime scene. While appellant informed Det. Begovic that he knew the individual who was the actual perpetrator, he failed to corroborate this statement with any evidence.
 {¶ 45} Also, the credible, circumstantial evidence clearly established that appellant's knowledge of the work schedule and location of the money assisted him during the break-in. Namely, appellant broke-in during a small time frame in which he knew no one would be at the warehouse. His knowledge of where the money was kept also allowed him to proceed directly to the closet.
 {¶ 46} Although there was no direct evidence placing appellant at the crime scene, there was ample physical and circumstantial evidence upon which the jury could rely to find appellant guilty of breaking and entering. See, e.g., State v.Burrows, 11th Dist. No. 2000-T-0089, 2002-Ohio-1961, at ¶ 178. Because the jury relied upon competent, credible evidence when convicting appellant on the breaking and entering charge, the conviction is not against the manifest weight of the evidence. Appellant's sixth assignment of error is without merit.
 {¶ 47} Under his third assignment of error, appellant contends that, per Blakely v. Washington (2004),124 S.Ct. 2531, the trial court erred by sentencing him to a maximum prison-term. We disagree.
 {¶ 48} In Apprendi v. New Jersey (2000), 530 U.S. 466, 490, the United States Supreme Court stated, "[o] ther than thefact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) The Court followed this rule in Blakely. TheBlakely court held that the "statutory maximum" for Apprendi
purposes is not the longest term a defendant can receive under the circumstances. Id. at 2537. Instead, the "statutory maximum" is "the maximum sentence a judge may impose solely on the basisof facts reflected in the jury verdict or admitted by thedefendant." (Emphasis sic.) Id. Accordingly, this court has consistently held that "[j]udicial findings based upon past criminal convictions, which increase a penalty for a crime, do not violate Apprendi or Blakely." State v. Haines, 11th Dist. No. 2003-L-035, 2005-Ohio-1692, at ¶ 144; State v. Adams,
11th Dist. No. 2003-L-110, 2005-Ohio-1107, at ¶ 67; State v.Parsons, 11th Dist. No. 2003-A-0030, 2004-Ohio-7237, at ¶ 32
 {¶ 49} Here, appellant was convicted of breaking and entering, a fifth degree felony, and possession of criminal tools, also a fifth degree felony. The minimum statutory prison-term for a fifth degree felony is six months, while the maximum prison-term is twelve months. The trial court imposed a twelve-month prison term on each count, with the terms to run concurrently.
 {¶ 50} R.C. 2929.14(B) states:
 {¶ 51} "(B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 52} "(1) The offender was serving a prison term at the time of the offense, or the offender previously served a prisonterm.
 {¶ 53} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." (Emphasis added.)
 {¶ 54} During the sentencing hearing, the trial court recited appellant's extensive criminal history which included multiple prison terms for separate convictions. As stated, judicial findings based upon past criminal convictions that increase a penalty for a crime do not violate or involve the holdings ofApprendi or Blakely. Haines at ¶ 144; Adams; Parsons. In short, appellant's individual sentences can be calculated in conformity with Apprendi and Blakely without resolution of factual issues beyond his multiple convictions and prison terms.Haines; Adams; Parsons. Thus, Blakely is inapplicable to the case at bar, and appellant's third assignment of error is without merit.
 {¶ 55} Under his fourth assignment of error, appellant contends that the court failed to satisfy the statutory sentencing requirements necessary to sentence him to an aggregate twelve-month prison term. First, appellant argues that the court failed to consider the relevant sentencing factors.
 {¶ 56} A reviewing court will not reverse a sentence unless an appellant establishes that the trial court failed to comply with the applicable statutory requirements or that it abused its discretion by failing to consider sentencing factors. State v.Rupert, 11th Dist. No. 2001-L-169, 2002-Ohio-7268, at ¶ 5. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 57} In State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, the Ohio Supreme Court held that a trial court is required to state its findings and reasoning within both the record of the sentencing hearing and judgment entry of sentence before imposing either a consecutive sentence or a sentence exceeding the minimum term of incarceration. Id. at paragraphs one and two of the syllabus.
 {¶ 58} Again, the minimum prison-term for a fifth degree felony is six months, and the maximum prison-term for a fifth degree felony is twelve months. Here, the trial court sentenced appellant to a twelve-month prison term; thus, the court was required to state its findings and reasoning at the sentencing hearing and within its judgment entry.
 {¶ 59} Pursuant to R.C. 2929.13(B), the court was required to consider the following factors before sentencing appellant for a fifth degree felony.
 {¶ 60} "(B)(1) Except as provided in division (B)(2), (E), (F), or (G) of this section, in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:
 {¶ 61} "(a) In committing the offense, the offender caused physical harm to a person.
"(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 {¶ 62} "(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 {¶ 63} "(d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
"(e) The offender committed the offense for hire or as part of an organized criminal activity.
 {¶ 64} * * *
 {¶ 65} "(g) The offender at the time of the offense was serving, or the offender previously had served, a prison term.
 {¶ 66} "(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.
 {¶ 67} "(i) The offender committed the offense while in possession of a firearm."
 {¶ 68} The court's sentencing entry stated, "[t]he Court has considered the factors under Revised Code Section 2929.13(B) and finds that the Defendant held a position of trust and the offense related to that position, the Defendant's professional reputation or position facilitated the offense or was likely to influence the future conduct of others, and the Defendant previously served a prison term." The court made the identical findings as part of its record of the sentencing hearing. Thus, the court satisfied the requirements of Comer.
 {¶ 69} Moreover, the court's sentencing entry properly found that, pursuant to R.C. 2929.14, appellant posed the greatest likelihood of recidivism. In doing so, the court noted that it had considered the recidivism factors of R.C. 2929.12. Under R.C.2929.12(D), the court was required to consider any relevant factor indicating appellant is likely to commit future crimes. Here, the court clearly considered appellant's extensive criminal history, which included various convictions and multiple, separate prison terms. The court also considered appellant's use of his employment position to facilitate the crime. The court's consideration of this recidivism factor was stated on the record at the sentencing hearing and within the sentencing entry. Therefore, the court again satisfied the requirements of Comer.
 {¶ 70} This portion of appellant's fourth assignment of error is not well-taken.
 {¶ 71} Appellant further argues that the sentence was improper predicated upon the court's alleged consideration of a crime which appellant had not been convicted. Specifically, appellant maintains that his sentence was based upon the court finding he had perpetrated a fraud upon the court.
 {¶ 72} During the initial sentencing hearing, appellant informed the trial court that he could not remember a previous drug trafficking conviction. When the court attempted to verify the drug trafficking conviction, it found a discrepancy as to the appellant's stated social security number and birth date. As a result, the trial court continued the sentencing hearing for another date to resolve the discrepancy. During the second sentencing hearing, appellant remembered the drug trafficking conviction and admitted the stated social security number was incorrect.
 {¶ 73} Although the trial court was not pleased with appellant's conduct during the sentencing hearing, there is a complete absence of evidence demonstrating that the court's sentence was predicated upon a finding of fraud. To the contrary, the record of the sentencing hearing and the court's sentencing entry clearly explained that appellant's sentence was based solely upon his prior convictions and the court's consideration of the relevant statutory factors. Thus, this portion of appellant's fourth assignment of error is also not well-taken.
 {¶ 74} Appellant's fourth assignment of error is without merit.
 {¶ 75} Under his first assignment of error, appellant argues that the court erred in determining the amount of restitution appellant was to pay the warehouse. Appellant maintains that there was no evidence of economic loss.
 {¶ 76} R.C. 2929.18(A) authorizes the court to order the financial sanction of restitution, to wit:
 {¶ 77} "* * * [T]he court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. * * *
 {¶ 78} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."
 {¶ 79} Here, the court ordered appellant to pay restitution in the amount of $2,421.21. The court indicated that this dollar amount was based upon evidence contained within the pre-sentence investigation report. The pre-sentence investigation report included a victim impact statement which stated that appellant's offenses resulted in property loss and damages in the amount of $2421.21. Thus, the court's order of restitution in this amount was proper, predicated upon the victim impact statement. Appellant's first assignment of error is without merit.
 {¶ 80} Based upon the foregoing analysis, appellant's first, second, third, fourth, fifth, and sixth assignments of error are without merit. We hereby affirm appellant's convictions and sentence.
Ford, P.J., concurs,
William M. O'Neill, J., dissents with Dissenting Opinion.