OPINION
{¶ 1} Appellant, Franklin Donnie Frye, appeals from the judgment entered by the Ashtabula County Court of Common Pleas. Frye was sentenced to a twelve-month prison term for his conviction for assault on a peace officer.
 {¶ 2} On September 21, 2002, William Miller went to visit his mother in the afternoon. His mother lives in the lower portion of a duplex. Miller's sister, Judith Tinner, lives in the upstairs half of the duplex. Frye is Tinner's boyfriend, and was visiting Tinner at her apartment when Miller arrived. Shortly thereafter, Miller and Frye became engaged in an argument. The argument escalated until Frye punched Miller in the face. Miller called the authorities.
 {¶ 3} Officers Joseph Cooper and Christopher Cahill of the Geneva City Police Department responded to the residence. Frye was outside when the officers arrived. Officer Cooper asked Frye about the incident with Miller. Frye admitted that he had hit Miller and began to walk back inside the residence. Officer Cooper ordered Frye to stop, but Frye did not comply with the order.
 {¶ 4} Frye entered the residence and ascended the staircase leading to the upstairs apartment. Officers Cooper and Cahill followed Frye up the stairs and encountered him at the top of the staircase. The officers told Frye he was under arrest, but Frye continued to resist their efforts to restrain him. Frye attempted to leave the residence, and the officers blocked his path. During this time, Frye pushed Officer Cooper to the ground. While Officer Cooper was on the ground, he witnessed Frye lift Officer Cahill up in the air and shake him. Officer Cooper was able to tackle Frye to the ground, and a wrestling match ensued. Officer Cooper stated that he maced Frye during the struggle, but it did not immediately affect Frye. Finally, the officers cornered Frye on a couch and were able to secure him with handcuffs.
 {¶ 5} The officers testified as to some of Frye's actions during the altercation. Officer Cooper testified that Frye grabbed Officer Cahill's duty weapon in an attempt to remove it. Officer Cahill felt his belt move due to someone grabbing something that was attached to it. Officer Cooper testified that Frye attempted to bite Officer Cahill. Officer Cahill testified that the microphone cord to his radio was bitten in half by Frye. In addition, Officer Cooper testified that Frye attempted to draw a pocket knife from a sheath, but the knife dropped to the ground without Frye obtaining control of it.
 {¶ 6} As a result of the altercation with the officers, Frye was indicted on one count of assault on a peace officer in violation of R.C. 2903.13, a fourth-degree felony. Frye was also indicted on one count of aggravated robbery in violation of R.C.2911.01, a first-degree felony. The aggravated robbery charge arose from Frye's attempt to remove Officer Cahill's service weapon. Frye pled not guilty to the charges, and a jury trial was held. The jury found Frye not guilty of robbery, but returned a guilty verdict on the assault on a peace officer charge. The trial court sentenced Frye to a prison term of twelve months on the assault conviction.
 {¶ 7} Frye raises four assignments of error. His first assignment of error is:
 {¶ 8} "The trial court erred to the prejudice of the appellant in failing to excuse a juror for cause and replacing that juror with an available alternate."
 {¶ 9} Frye argues the trial court erred when it failed to excuse a juror, Thomas Kennedy, for cause. During voir dire, the jury was asked whether any of them knew several potential witnesses, including William Miller. While the record is silent, presumably all of the potential jurors indicated they did not know Miller. Prior to the start of trial, Juror Kennedy met in chambers with the trial court and the attorneys, but outside the presence of the other jurors. At that time, Juror Kennedy indicated that he knew William Miller as Les Miller. Juror Kennedy also stated he knew Judy Tinner.
 {¶ 10} As to Miller, Juror Kennedy stated that he had known him since junior high school, that they were "good friends," and that he would buy Miller a beer if he encountered him at a bar. Juror Kennedy stated that he could be fair and impartial in spite of the fact he knew Miller.
 {¶ 11} Defense counsel objected to Juror Kennedy remaining on the jury and moved the trial court to replace him with the alternate juror. Defense counsel argued that he had used all of his peremptory challenges on other jurors because Juror Kennedy had not disclosed his association with Miller during voir dire. The trial court denied the motion, and allowed Juror Kennedy to remain on the jury. The court found that the fact Juror Kennedy knew Miller and Tinner would not affect his ability to be fair and impartial.
 {¶ 12} "A trial court's ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion."[1] The term "abuse of discretion" implies that the court's decision was arbitrary, unreasonable, or unconscionable.[2]
 {¶ 13} The trial court was present when Juror Kennedy was questioned about his relationship with Miller. At that time, Juror Kennedy stated that he could be fair and impartial and the fact that he knew Miller would not have any bearing on his consideration of the case. Thus, the trial court was in a position to specifically assess Juror Kennedy's credibility and, ultimately, his ability to be impartial.[3]
 {¶ 14} Moreover, while Miller's incident with Frye was the reason the police were called, Miller was outside the residence during Frye's physical altercation with the police. Miller's testimony did not directly go toward any of the elements of the crimes Frye was charged with. Frye was accused of assaulting a police officer and attempting to take Officer Cahill's firearm. In this case, he was not charged with any crimes relating to Miller.
 {¶ 15} The trial court did not abuse its discretion by failing to remove Juror Kennedy for cause.
 {¶ 16} Frye's first assignment of error is without merit.
 {¶ 17} Frye's second assignment of error is:
 {¶ 18} "The state produced insufficient evidence to support appellant's conviction for assault on a peace officer, a felony of the fourth degree."
 {¶ 19} Initially, we note that Frye moved for acquittal, pursuant to Crim.R. 29, only in relation to the evidence regarding the aggravated robbery charge. He did not challenge the sufficiency of the evidence relating to the assault on a peace officer charge. There is a split of authority from this court as to whether a defendant's failure to object to the sufficiency of the evidence at trial waives that argument on appeal. In Statev. Jenkins, this court held that a defendant is required to move the court for acquittal in order to preserve a sufficiency of the evidence challenge on appeal.[4] However, in State v.Perry, this court noted that the "Ohio Supreme Court has held that a defendant's not guilty plea preserves an argument relating to the sufficiency of the evidence for appeal."[5]
Therefore, this court held that a defendant's failure to move for acquittal does not waive a sufficiency of the evidence challenge on appeal.[6] Due to the split of authority on this issue, for the purposes of this appeal, we will proceed as though Frye has not waived his constitutional right to challenge the sufficiency of the evidence.[7]
 {¶ 20} When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[8]
 {¶ 21} Frye was charged with assault on a peace officer, in violation of R.C. 2903.13, which provides, in part:
 {¶ 22} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 {¶ 23} "(B) No person shall recklessly cause serious physical harm to another or another's unborn.
 {¶ 24} "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division(C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree.
 {¶ 25} "* * *
 {¶ 26} "(3) If the victim of the offense is a peace officer, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree."
 {¶ 27} While the indictment did not specifically refer to section (A) of R.C. 2903.13, the language in the indictment clearly indicates this is the section of the statute Frye was charged with. In addition, this was the section the jury was instructed on.
 {¶ 28} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[9]
 {¶ 29} The testimony of Officers Cahill and Cooper clearly established that they were acting in their official capacities as police officers during the incident. Thus, the state provided sufficient evidence regarding the elements set forth in R.C.2903.13(A) and (C)(3).
 {¶ 30} The combined testimony of Officers Cooper and Cahill was that (1) Frye attempted to retrieve a knife during the struggle with the officers, (2) Frye attempted to remove Officer Cahill's firearm, and (3) Frye attempted to bite Officer Cahill, resulting in his microphone cord being severed. This evidence was sufficient for a reasonable juror to find that Frye knowingly attempted to cause serious physical harm to the officer.
 {¶ 31} Frye argues that the only physical evidence of an assault introduced by the state was a torn uniform shirt. First, we note the officers directly testified to Frye's actions. Their testimony, standing alone, was sufficient evidence as to all of the elements of assault on a peace officer. Also, both officers testified that they sustained injuries, which resulted in time off work. More importantly, we note that Frye was charged under R.C. 2903.13(A), which only requires an individual attempt to cause physical harm to another. Thus, the lack of physical evidence establishing the officer's injuries is in no way fatal to the state's case.
 {¶ 32} The state provided sufficient evidence to support Frye's conviction for assault on a peace officer.
 {¶ 33} Frye's second assignment of error is without merit.
 {¶ 34} Frye's third assignment of error is:
 {¶ 35} "Appellant's conviction for assault of a peace officer was against the manifest weight of the evidence."
 {¶ 36} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 37} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[10]
 {¶ 38} Judith Tinner, Frye's girlfriend and Miller's sister, testified for the defense. Generally, her testimony depicted Officers Cooper and Cahill as the aggressors in the incident. She testified the officers grabbed Frye and threw him into the couch. She was worried about Frye when he was on the couch, because Frye's head was buried in the couch and she believed he was being hurt. Several times during the incident she yelled for the officers to stop, due to her belief that they were hurting Frye.
 {¶ 39} Frye argues the officers' testimony was incredible because it differed from that of the other witnesses, including Tinner. Specifically, he notes several witnesses heard Tinner scream, but claims the officers testified that they did not remember hearing Tinner yell. However, Officer Cooper specifically testified that Tinner was "on this side of me yelling, screaming, very upset about the whole situation."
 {¶ 40} Also, Frye notes that Officer Cahill initially stated he did not have prior dealings with Frye, but, then, admitted he had previously arrested Frye.
 {¶ 41} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide.[11] The jury heard the testimony of the witnesses and was in the best position to make a judgment as to their credibility. Apparently, the jury found the officers' testimony credible.
 {¶ 42} We cannot say the jury lost its way or created a manifest miscarriage of justice when it found Frye guilty of assault on a peace officer.
 {¶ 43} Frye's third assignment of error is without merit.
 {¶ 44} Frye's fourth assignment of error is:
 {¶ 45} "The trial court erred to the prejudice of the appellant by failing to grant the motion of defense counsel for a mistrial, or in the alternative, offer a curative instruction to the jury to disregard inappropriate comments made by the prosecution during closing argument."
 {¶ 46} Frye argues the assistant prosecutor made an inappropriate comment during his closing argument. Specifically, Frye objects to the prosecutor's statement that "[defense counsel] says that [Frye] was assaulted. Where [are] his medical records then?" Frye objected to this comment. The trial court overruled Frye's objection and instructed the jury that they "remember what the evidence is in this case."
 {¶ 47} We note that counsel is to be given latitude during summation.[12] In addition, prosecutorial misconduct will not be a ground for error unless the defendant is denied a fair trial.[13] Also, this court has held that "`it is not improper for a prosecutor to comment upon the evidence in [a] closing argument and to state the appropriate conclusions to be drawn therefrom.'"[14]
 {¶ 48} Frye asserts that the assistant prosecutor's comment improperly referred to his right not to testify or present evidence. The state is permitted to comment about a defendant's failure to offer evidence.[15] However, the state may not mention the defendant's decision not to testify.[16]
 {¶ 49} The assistant prosecutor was merely noting that Frye did not offer any medical evidence in support of his theory that he was the victim of the altercation. This comment was made in response to defense counsel arguing that the state did not offer any medical evidence in support of the officers' injuries. The assistant prosecutor was not commenting on Frye's decision to avoid the witness stand. Rather, he was noting that there was a lack of medical evidence in support of Frye's claim that he was attacked by the officers. This comment was not improper.
 {¶ 50} Further, we again note that R.C. 2903.13(A) only requires an attempt to cause injury. Therefore, the lack of medical evidence from either side had minimal relevance to the ultimate issue before the jury, because the state only needed to prove that Frye attempted to cause serious physical harm, not that anyone was actually harmed in the incident. Accordingly, even if it could be argued that the assistant prosecutor's comment was improper, Frye was not denied a fair trial due to the comment.
 {¶ 51} The trial court did not err by overruling Frye's objection to this comment.
 {¶ 52} Frye's fourth assignment of error is without merit.
 {¶ 53} The judgment of the trial court is affirmed.
Grendell, J., Rice, J., concur.
[1] State v. Williams (1997), 79 Ohio St.3d 1, 8, citingState v. Wilson (1972), 29 Ohio St.2d 203, 211.
[2] State v. Adams (1980), 62 Ohio St.2d 151, 157-158.
[3] See State v. Murphy (2001), 91 Ohio St.3d 516, 526.
[4] State v. Jenkins, 11th Dist. No. 2003-L-173,2005-Ohio-3092, at ¶ 41, citing State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 21.
[5] State v. Perry, 11th Dist. No. 2004-L-077,2005-Ohio-6894, at ¶ 31, citing State v. Jones (2001),91 Ohio St.3d 335, 346 and State v. Carter (1992), 64 Ohio St.3d 218,223.
[6] Id., citing State v. Shadoan, 4th Dist. No. 03CA764,2004-Ohio-1756, at ¶ 16 and Mayfield Hts. v. Molk, 8th Dist. No. 84703, 2005-Ohio-1176.
[7] See State v. Miller, 11th Dist. No. 2004-P-0049,2005-Ohio-6708, at ¶ 67.
[8] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307.
[9] R.C. 2901.22(B).
[10] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[11] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[12] State v. Woodards (1966), 6 Ohio St.2d 14, 26.
[13] (Citations omitted.) State v. Maurer (1984),15 Ohio St.3d 239, 266.
[14] State v. Scheidel, 11th Dist. No. 2003-A-0087,2006-Ohio-195, at ¶ 35, quoting State v. Kish, 11th Dist. No. 2001-L-014, 2002-Ohio-7130, at ¶ 52.
[15] (Citations omitted.) State v. Collins (2000),89 Ohio St.3d 524, 527.
[16] Id. at 528, citing State v. Thompson (1987),33 Ohio St.3d 1, 4.