JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Mathew Molk ("Molk") appeals from the decision of the Lyndhurst Municipal Court that found Molk guilty of driving under the influence, weaving, and using fictitious plates. Finding no error in the proceedings below, we affirm.
 {¶ 2} The following facts give rise to this appeal. On October 16, 2003, around 2:15 a.m., Mayfield Heights Police Officer Robert Lord observed Molk's vehicle, a 1995 GMC Tahoe, weaving within his lane while traveling eastbound on Mayfield Road. Officer Lord reported the license plate to dispatch and continued to follow the vehicle. Officer Lord was informed by dispatch that the plates were registered to a 1979 Chevy station wagon. He then pulled Molk over.
 {¶ 3} Molk exited his vehicle and stood behind it. The officer informed him that he had been pulled over for weaving. Molk denied he was weaving and claimed he was avoiding "potholes." Molk produced his driver's license and was then advised to return to his vehicle. Officer Lord noticed that Molk showed signs of intoxication, including a strong odor of alcohol, slurred speech, and bloodshot eyes, and that Molk was unsteady on his feet. Also, Molk purportedly admitted to Officer Lord that he had "a lot" to drink that evening. Officer Lord then called for backup. A short time later, Officer Dan Snyder, of the Mayfield Heights police, arrived to serve as backup for Officer Lord.
 {¶ 4} Officer Lord testified that when he returned to Molk's vehicle, he observed that Molk had fallen asleep. Molk denied ever falling asleep and claimed he had called his son on his cell phone during this time period.
 {¶ 5} Officer Lord then asked Molk to perform a field sobriety test. He initially administered the horizontal gaze nystagmus test, or "HGN." Officer Lord testified that Molk's eyes showed a "lack of smooth pursuit" and that Molk showed evidence of nystagmus, both prior to Molk's eyes moving forty-five degrees and at maximum deviation during the test. Officer Lord was not asked to specify how many clues Molk exhibited as a result of these observations.[1]
 {¶ 6} Next Officer Lord attempted to have Molk complete the "walk and turn" test. Molk took a couple of steps, but he then asked Officer Lord if he had a video camera and refused to continue when he realized he was being videotaped. Officer Lord's vehicle was equipped with a video camera, but the audio was not working.[2] Officer Lord concluded Molk was highly intoxicated. Molk was arrested and charged with driving under the influence of alcohol, weaving, using fictitious plates, and failure to wear a seatbelt.
After a trial to the bench, Molk was found guilty of all charges except failure to wear a seatbelt.
 {¶ 7} Molk timely appeals this decision and advances four assignments of error for our review.
 {¶ 8} "I. The trial court erred by permitting the City to call Patrolman Robert Lord when it failed, without justification or excuse, to provide his name in advance of trial."
 {¶ 9} We first note that Molk decided to represent himself at trial. Pro se litigants are "presumed to have knowledge of the law and of correct legal procedure and [are] held to the same standard as all other litigants." Siemientkowski v. Moreland Homes, Inc., Cuyahoga App. No. 84758, 2005-Ohio-515, citing Kilroy v. B.H. Lakeshore Co. (1996),111 Ohio App.3d 357, 363.
 {¶ 10} Molk argues that the trial court should have excluded the testimony of the arresting officer or, at the very least, granted a continuance, because the state failed to provide Molk with a witness list. Further, Molk argues that he was not provided a copy of the videotape taken by the arresting officer.
 {¶ 11} When a prosecutor violates Crim.R. 16 by failing to provide the name of a witness, a trial court does not abuse its discretion in allowing the witness to testify where the record fails to disclose (1) a willful violation of the rule, (2) that foreknowledge would have benefitted the accused in the preparation of his or her defense, or (3) that the accused was unfairly prejudiced. State v. Scudder (1994),71 Ohio St.3d 263, 269, citing State v. Heinish (1990), 50 Ohio St.3d 231, syllabus. The same tripartite test applies for determining whether a trial court has abused its discretion in admitting other evidence that was not properly disclosed under Crim.R. 16. Id.
 {¶ 12} Here, the trial court ruled that Molk was not unfairly prejudiced because he had an opportunity to view the police report at previous pretrials and was in possession of a copy of his ticket, which indicated the arresting officer's name and badge number. Further, prior to trial Molk refused to watch the videotape; however, the trial court insisted that he view it before trial. Finally, the trial court asked Molk if he wanted a continuance and a copy of the videotape to take home and prepare for trial, but Molk declined. Therefore, we find that the trial court did not abuse its discretion when it allowed the arresting officer to testify and when it admitted the videotape into evidence.
 {¶ 13} Molk's first assignment of error is overruled.
 {¶ 14} "II. The trial court erred by finding the appellant guilty of the use of illegal license plates."
 {¶ 15} Molk argues that the city failed to prove beyond a reasonable doubt that he was guilty of using illegal license plates. At trial, Molk, a pro se defendant, never moved for an acquittal pursuant to Crim.R. 29.
 {¶ 16} As this court recognized in State v. Byrd, Cuyahoga App. No. 82145, 2003-Ohio-3958:
"[T]he failure to timely file a Crim.R. 29(A) motion during a jurytrial does not waive an argument on appeal concerning the sufficiency ofthe evidence. See State v. Jones (2001), 91 Ohio St.3d 335, 346, 2001Ohio 57, 744 N.E.2d 1163; State v. Carter (1992) 64 Ohio St.3d 218, 223,1992 Ohio 127, 594 N.E.2d 595. In both Jones and Carter, the Ohio SupremeCourt stated that the defendant's `not guilty' plea preserves his rightto object to the alleged insufficiency of the evidence. Id. Moreover, theUnited States Supreme Court has held that the Due Process Clause of theFourteenth Amendment to the United States Constitution protects adefendant in a criminal case against a conviction `* * * except uponproof beyond a reasonable doubt of every fact necessary to constitute thecrime with which he is charged.' In re Winship (1970), 397 U.S. 358, 364,90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375. Accord State v. Thompkins(1997), 78 Ohio St.3d 380, 386-387, 1997 Ohio 52, 678 N.E.2d 541 (because`"a conviction based on legally insufficient evidence constitutes adenial of due process[.]"')."
 {¶ 17} When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 18} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted). Furthermore, the power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, 20 Ohio App.3d 172, 175.
 {¶ 19} Here, Molk was charged with "fictitious plates" in violation of Mayfield Heights Cod. Ord. 335.10, which prohibits one from operating a motor vehicle with fictitious plates or plates belonging to another vehicle. It is uncontroverted in this case that the plates on the 1995 GMC Tahoe that Molk was driving when he was stopped were registered to a 1979 Chevy station wagon. Further, there is no evidence in the record that Molk fit into any exception under the law.
 {¶ 20} We are cognizant that the only evidence in the record regarding the status of the license plates was the representation by Officer Lord regarding what he learned from a dispatcher over the radio. The plates were not entered into evidence, and the owner of the vehicle to which the plates were assigned was never identified. Nevertheless, Molk failed to object to this testimony, and further he failed to cross-examine Officer Lord regarding how Officer Lord characterized the plates as "fictitious." Although we acknowledge that this is a very close call and does not represent the optimum method of establishing proof in such instances, the evidence was completely unchallenged. Therefore, we find that the trial court did not err in finding Molk guilty as charged.
 {¶ 21} Molk's second assignment of error is overruled.
 {¶ 22} "III. The City failed to prove that Molk was guilty of weaving under Section 331.38(b) of the Codified Ordinances of the City of Mayfield Heights, Ohio."
 {¶ 23} Molk argues that he was not weaving within his lane but rather moved to avoid impediments in the road. Mayfield Heights Cod. Ord. 331.38(b) provides: "No person shall operate a motor vehicle upon any street or highway in a weaving or zigzag course unless such irregular course is necessary for safe operation or in compliance with the law."
 {¶ 24} Molk does not challenge the validity of the ordinance. Nevertheless, a review of the applicable law is relevant to addressing Molk's claim, which appears to raise both a sufficiency and a manifest weight challenge.
 {¶ 25} Although there is no specific state statute covering "weaving within a lane," municipal ordinances similar to the Mayfield Heights ordinance do exist, and at least one district has upheld such ordinances after appellate review. As the court recognized in State v. Hodge,147 Ohio App.3d 550, 559, 2002-Ohio-3053: "First, we must acknowledge there is no law in the state of Ohio prohibiting per se weaving within one's lane. However, at least one appellate district has upheld local ordinances with such provisions." Id., citing City of Cuyahoga Falls v.Morris (Aug. 19, 1998), Summit App. No. 18861 (where the court overruled a void for vagueness challenge) ; State v. Carver (Feb. 4, 1998), Medina App. No. 2673-M. "`Courts have also found that weaving within a lane can support an investigatory stop, even when such weaving itself is not illegal.'" Hodge, 47 Ohio App.3d at 559, quoting State v. Flannagan
(June 14, 2000), Wayne App. No. 99CA0045, 2, citing State v. Gedeon
(1992), 81 Ohio App.3d 617, 618-619.
 {¶ 26} Officer Lord testified that he noticed the truck in front of him weaving within the lane. He called the plate into dispatch and continued to follow the vehicle. While waiting for dispatch to respond, Officer Lord observed the vehicle weave several more times. Further, the videotape shows Molk weaving within his lane, although it does not reveal any impediments in the road. This evidence is consistent with an "irregular course" as prohibited by the statute. Therefore, the trial court did not err in finding Molk guilty of the offense of weaving.
 {¶ 27} Molk's third assignment of error is overruled.
 {¶ 28} "IV. The City failed to prove that Molk was operating a motor vehicle while under the influence of alcohol."
 {¶ 29} Molk argues that his conviction for driving under the influence of alcohol is against the manifest weight of the evidence. Molk was convicted of violating Mayfield Heights Codified Ordinance 333.01(a)(1), which reads: "Driving under the Influence. No person shall operate any vehicle within this Municipality, if, at the time of the operation, any of the following apply: (1) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 30} While the trial court had specific evidence regarding the HGN, a NHTSA-approved field sobriety test,[3] it also had a number of factors that established Molk was impaired. These factors exist even in the absence of a NHTSA-approved field sobriety test.
 {¶ 31} "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." State v. Schmitt, 101 Ohio St.3d 79, 83, 2004-Ohio-37. "Such lay testimony is often crucial in prosecuting drunk driving cases. Moreover, such evidence is relevant and admissible pursuant to Evid.R. 401 and Evid.R. 402. Thus, courts have recognized that `to prove impaired driving ability, the state can rely on physiological factors (e.g.,
slurred speech, bloodshot eyes, odor of alcohol) and coordination tests (e.g., field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired.'" Id., quoting State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528.
 {¶ 32} The record reveals that there was substantial evidence upon which the trier of fact could have reasonably concluded that Molk was impaired. The testimony revealed that Molk was pulled over for weaving within his lane. By Molk's own admission, he had drunk at least four beers, and the officer observed an odor of alcohol about Molk's person. The officer also indicated that Molk had fallen asleep during the stop. Further, his speech was slurred and his eyes were bloodshot. Ohio courts have repeatedly held that a conviction for a violation under R.C.4511.19(A), or similar municipal statute, can be supported by the officer's observations even in the absence of field sobriety tests. Statev. Ryan, Tuscarawas App. No. 2004 AP 03 0027, 2005-Ohio-555. After a review of the record, we cannot say that the conviction is against the manifest weight of the evidence.
 {¶ 33} Molk's fourth assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and McMonagle, J., concur.
[1] "The Ohio Supreme Court has noted that the HGN test is considered `the single most accurate field test to use in determining whether a person is alcohol impaired.' State v. Bresson (1990), 51 Ohio St.3d 123,125, 554 N.E.2d 1330, citing U.S. Department of Transportation, National Highway Safety Administration, Improved Sobriety Testing (1984) 4. The Supreme Court of Ohio has described the test itself thus: `"Nystagmus" has been defined as a "rhythmic to-and-fro oscillation of the eyes[,]" or as an involuntary jerking of the eyeball. * * * The driver taking the HGN test is usually asked to focus on a "stimulus" (such as a pen) held in an officer's hand at the driver's eye level approximately six to eight inches away. The officer will then move the stimulus gradually out of the driver's field of vision toward the driver's ear. Because it has been shown that the onset of the angle of nystagmus at less than forty-five degrees indicates the presence of alcohol, the officer watches each eye to determine whether nystagmus occurs at an angle less than forty-five degrees. * * * A person may receive up to six points on the HGN test. * * * A score of four or more points indicates a BAC level above .10 percent.' Id. at 125-126 (internal citations omitted)." City of Willoughbyv. Wutchiett, Lake App No. 2002 L 165, 2004-Ohio-1177, fn.3.
[2] We note that the videotape in this record was of very poor quality, with no audio, capturing little more than Molk weaving.
[3] Molk failed to file a motion challenging the validity of both the HGN test process and results. Under these facts, it is unnecessary for us to evaluate the reliability of the HGN evidence to support impairment in light of the other evidence in the record.