OPINION
{¶ 1} Appellant, Dale W. Heigley, appeals his conviction by the Lake County Court of Common Pleas for failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C.2921.331(B). Appellant challenges the sufficiency and weight of the evidence. For the reasons that follow, we affirm.
 {¶ 2} On September 15, 2007, at approximately 11:00 p.m., Trooper Steven Jefferies of the Ohio State Patrol, Chardon post, was working off-duty detail on State Route 2 westbound at the bridge overpass at Richmond Street in Painesville, Ohio. He *Page 2 
was in a marked patrol cruiser with rotating lights and in police uniform. The bridge was being resurfaced and the westbound lanes were closed to traffic. Markers indicated westbound traffic was to merge into the left-hand lane. The construction zone had been established by the Ohio Department of Transportation, and construction workers were working on the bridge at that time.
 {¶ 3} Billboards on Richmond Street advised motorists the ramp and Route 2 westbound were closed to traffic. The entrance ramp westbound to Route 2 had been blocked off by orange construction barrels on Richmond Street, and no vehicles were permitted to enter the ramp. There was also a line of orange construction barrels on Route 2 westbound at that location. Construction trucks were also parked at the top of the ramp to prevent any vehicles that might enter the construction zone from striking construction workers.
 {¶ 4} At that time Trooper Jefferies was in his patrol car in the right hand lane on Route 2 westbound by the construction barrels when he saw a red pickup truck coming from the bottom of the ramp from Richmond Street. The pickup stopped behind a construction truck, and the trooper decided to talk to its driver. Trooper Jefferies left his cruiser and walked around the barricades and construction truck toward the front of the pickup. The trooper saw the truck was a red Chevy pickup and had large construction racks in the back with construction equipment on them. The only occupant of the pickup was the driver, a white male Trooper Jefferies identified as appellant, who had a large brown pit bull dog lying on the front passenger seat.
 {¶ 5} As the trooper approached the pickup, the driver's side window was down and the trooper smelled a strong odor of alcohol coming from inside the truck. The *Page 3 
trooper informed appellant he had committed a traffic violation by driving on the closed roadway. Appellant did not acknowledge the trooper's presence and stared straight ahead. The trooper asked appellant to pull his vehicle onto the grassy area on the side of the road. Appellant then looked directly at the trooper and said he was going home. The trooper saw appellant's eyes were glassy. Appellant then put his foot on the accelerator and sped through the construction zone. He drove through the barrels and went westbound on Route 2, speeding by five to ten construction workers. The trooper ran back to his cruiser and began pursuit of appellant at 11:03 p.m.
 {¶ 6} Trooper Jefferies contacted his post in Chardon to advise he was attempting to arrest a violator. He activated the dash camera on his cruiser to record the pursuit. His overhead rotating lights were already activated, and he turned on his siren to try to get appellant to stop.
 {¶ 7} The tail lights on appellant's pickup were not functioning. The speed limit in the construction zone at that time was 45 miles per hour and then 60 miles per hour beyond the construction zone. The trooper was pursuing appellant on Route 2 at speeds greater than 70 miles per hour.
 {¶ 8} During the pursuit, the trooper called in the pickup's license number to his dispatcher to obtain the identity of the driver. The pickup came back as being owned by Wendell Heigley, later identified as appellant's father.
 {¶ 9} At 11:04 p.m., appellant left Route 2 and entered the exit for State Route 44, passing a vehicle on the one-lane ramp and forcing that vehicle off the roadway on the ramp. The trooper continued his pursuit of appellant who was speeding southbound on State Route 44 at speeds greater than 70 miles per hour. Other traffic was present *Page 4 
on Route 44 at that time. At 11:05 p.m., just north of Jackson Street, appellant pulled off to the side of the road. Trooper Jefferies pulled over, exited his cruiser, and ordered appellant to "get out of the car!" The officer's overhead lights and siren were still activated at that time. While the trooper was out of his vehicle, appellant suddenly accelerated his truck and continued his efforts to flee. The trooper ran back to his cruiser to continue his pursuit. Appellant drove on the berm while merging traffic was attempting to exit Route 44 at the Jackson Street exit.
 {¶ 10} While appellant was on the exit ramp leading to Jackson Street, another motorist went in between appellant's pickup and Trooper Jefferies' cruiser. Appellant then exited Route 44 and turned right on Jackson Street. He drove through the red light at the intersection there without stopping or slowing down, and at 11:07 p.m., turned left into a private drive in a commercial area. As he was driving around a building there, appellant turned his headlights off. At 11:08 p.m., he turned left back onto Jackson Street. The pickup was travelling at 50 miles per hour in a 35 miles per hour zone. There were other vehicles on the street at that time, and appellant passed several vehicles in violation of a double line.
 {¶ 11} The pursuit continued on Jackson Street. At 11:09 p.m., appellant turned right on Heisley Road without stopping for the red light, attempting to slow down, or giving a turn signal. Appellant continued travelling at high speeds in this residential neighborhood with other vehicles on the road. He then turned right onto Hamilton Drive, a business district, in Mentor, Ohio, without making a turn signal. He turned left going through a stop sign, and at 11:11 p.m., Trooper Jefferies lost sight of his vehicle. The trooper returned to Hamilton Drive to meet officers dispatched to assist him. *Page 5 
 {¶ 12} Officers from the Mentor Police Department arrived. Trooper Jefferies had radioed he was looking for a red pickup with an older white male and a large dog, and said the male was probably hiding behind one of the buildings in the area. The Mentor police officers then checked the buildings. Next, two other troopers from the Chardon post of the Ohio State Patrol arrived. Trooper Kevin Harris turned into the first drive, Mercantile Drive, and located appellant's red pickup behind the first building. He radioed dispatch that he had located the red pickup truck. This was approximately three minutes after Trooper Jefferies had lost sight of appellant's pickup.
 {¶ 13} Trooper Harris whistled for a dog and at 11:19 p.m., the troopers heard a barking dog inside. Trooper Harris then secured the back door of the building and no one came out. Troopers Jefferies and Jim Smith and Sgt. Ken Willis of the Mentor Police Department attempted to get appellant to come to the front door by pounding on it and by pleading with him to come out for about one hour.
 {¶ 14} At 12:38 a.m., appellant came to the front door with his dog. He opened the door a few inches and Trooper Jefferies and the other officers asked appellant to step outside, but he refused. A strong odor of alcohol was coming from appellant's person and his eyes were bloodshot. He appeared highly intoxicated. Appellant tried to go back in the building and close the door, and the three officers pulled him out and told him to get on the ground, but he refused. Appellant's pit bull dog came out and bit Sgt. Willis on the leg. Sgt. Willis then kicked the dog to get him to go back into the building.
 {¶ 15} Troopers Jefferies and Smith struggled with appellant, trying to get him to the ground, and they had to wrestle with him because he would not cooperate. Trooper Jefferies then told Trooper Smith to let appellant go so he could taser him. After *Page 6 
appellant was tased, he dropped and sat on the ground. The troopers told appellant to lay flat on the ground, but he refused. At that point Sgt. Zemelka arrived on the scene, and he and Trooper Smith grabbed appellant; laid him flat on the ground; turned him over; and cuffed and arrested him.
 {¶ 16} After appellant was arrested, the officers decided not to enter the building because they had appellant in custody and because the pit bull dog had become agitated and they did not want to injure the dog.
 {¶ 17} Trooper Jefferies testified that during the pursuit, appellant posed a risk of harm to other drivers and other individuals by, e.g., travelling at unreasonably high speeds; swerving his vehicle; forcing vehicles off the roadway on the ramp; going through a red light on Jackson Street; driving without his headlights on; failing to yield on Jackson Street; travelling left of center three times on Jackson Street, a two-lane road; and making a right-hand turn on a red light without slowing down.
 {¶ 18} Appellant was indicted on one count of failure to comply with order or signal of police officer, a felony of the third degree, in violation of R.C. 2921.331(B). Appellant waived his right to jury trial, and the case proceeded to bench trial. The court found defendant guilty of the indictment. On July 12, 2007, appellant was sentenced to three years of community control with 120 days in the Lake County Jail. Appellant appeals his conviction, asserting the following single assignment of error:
 {¶ 19} "THE TRIAL COURT ERRED AS A MATTER OF LAW AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE COURT'S FINDINGS, AND APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 7 
 {¶ 20} As the first issue under his assignment of error, appellant argues the evidence was insufficient to establish beyond a reasonable doubt that he was the driver of the pickup. He thus challenges the sufficiency of the identification evidence.
 {¶ 21} Our review of the record reveals that appellant never made a Crim.R. 29 motion for acquittal. In fact, following the presentation of the state's evidence, appellant's counsel stated, "No motions and no evidence to present, your Honor. We would rest."
 {¶ 22} This court held in State v. Perry, 11th Dist. No. 2004-L-077,2005-Ohio-6894, at ¶ 31:
 {¶ 23} "Generally, a defendant's failure to raise an alleged error with the lower court acts to waive the error on appeal. However, the Ohio Supreme Court has held that a defendant's not guilty plea preserves an argument relating to the sufficiency of the evidence for appeal.State v. Jones (2001), 91 Ohio St. 3d 335, 346 * * *. See, also, State v.Carter (2001), 64 Ohio St.3d 218, 223 * * *. Thus, appellant's failure to move for acquittal did not waive his sufficiency argument on appeal. See, e.g., State v. Shadoan, 4th Dist. No. 03CA764, 2004-Ohio-1756, at ¶ 16; Mayfield Hts. V. Molk, 8th Dist. No. 84703, 2005-Ohio-1176." (Emphasis sic.)
 {¶ 24} "Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury, i.e., whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. Sufficiency is a test of adequacy that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. State v. Boyle, 11th Dist. Nos. 2004-P-0099, 2004-p-0100 and *Page 8 
2004-p-0101, 2005-Ohio-5493, at ¶ 22. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus; State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14. In reviewing the sufficiency of the evidence to support a criminal conviction, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra. Circumstantial evidence and direct evidence inherently possess the same probative value, even when used to prove the essential elements of the crime. Id. at 272.
 {¶ 25} In contrast, weight of the evidence involves the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other. Thompkins, supra, at 387. Generally, the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus. However, when reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Thompkins, supra. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Schlee, supra. The discretionary power to grant a new trial should be exercised only in *Page 9 
the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175. When considering the credibility of the witnesses, the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the fact finder. State v. Awan (1986), 22 Ohio St.3d 120,123. The finder of fact is free to believe all, part, or none of the testimony of each witness. State v. Thomas, 11th Dist. No. 2004-L-176,2005-Ohio-6570, at ¶ 29.
 {¶ 26} In addition to the elements of the crime, the state is required to prove the identity of the perpetrator of the crime beyond a reasonable doubt. State v. Cook (1992), 65 Ohio St.3d 516, 526. Here, the state presented both direct and circumstantial evidence to prove the identity of the driver pursued by Trooper Jefferies.
 {¶ 27} The trooper testified that when he first approached appellant's pickup on foot, the construction zone was well-lit. He walked toward the front of appellant's vehicle and had a frontal view of his face. Later, when advising appellant he had committed a traffic violation, the trooper saw the side of appellant's face because appellant was looking straight ahead rather than at the trooper. When Trooper Jefferies told appellant to pull over, appellant then looked directly at him and said he was going home. The trooper testified that at that point he looked directly into appellant's eyes. He thus again looked directly at the front of appellant's face. The trooper testified that nothing impeded his ability to see appellant, and he had a clear view of his face. He said he was just a couple feet from appellant when he was talking to him. Trooper Jefferies testified that when the suspect later came to the door of the building on Mercantile Drive, he had "no doubt" he was the same person who was earlier driving on *Page 10 
Route 2. The trooper said the male who opened the door had the same features as the driver of the pickup, including the same bald spot on his forehead.
 {¶ 28} The state also presented circumstantial evidence on the identification issue. Trooper Jefferies testified the red Chevy pickup he saw on Mercantile Drive was the same pickup and had the same license number as the truck he had seen on Route 2. When the trooper checked on the registration of the truck during the pursuit, it came back as being owned by a person who happened to be appellant's father. When appellant came to the door of the building, he had a large pit bull dog just as the driver of the pickup on Route 2. Further, a strong odor of alcohol emanated from appellant while he was in the truck on Route 2 and when he came to the door of the building on Mercantile Drive.
 {¶ 29} Appellant argues the officers should have searched the building to determine whether another individual was in the building who might have been the suspect. This argument, however, goes to the weight of the evidence rather than its sufficiency. When considering the sufficiency of the evidence, we are required to view the evidence in a light most favorable to the prosecution. Jenks, supra. Viewing the identification evidence in a light most favorable to the state, we hold the evidence was sufficient to prove that appellant was the driver of the pickup truck which drove onto the closed section of Route 2.
 {¶ 30} If we were to consider this argument as a challenge to the weight of the evidence, the argument would still not be well-taken. The trial court was clearly not persuaded by the suggestion made during the cross examination of Trooper Jefferies that the police should have searched the building after appellant was arrested. In light *Page 11 
of the evidence presented, we cannot say the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.
 {¶ 31} Next, almost as an afterthought in his brief, appellant challenges the sufficiency of the evidence to prove the elements of the offense. However, while appellant states the court should not have determined the state had proven the elements of the crime, he presents no specific arguments or challenges in support. Our thorough review of the record, however, compels us to conclude that the state presented sufficient evidence in support of each element of the offense.
 {¶ 32} To prove the charge of failure to comply with order or signal of police officer, the state had the burden to prove, beyond a reasonable doubt, that appellant (1) operated a motor vehicle (2) so as willingly to elude or flee a police officer (3) after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop, and (4) the operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property.
 {¶ 33} First, Trooper Jefferies testified that appellant operated the red Chevy pickup on Route 2.
 {¶ 34} Next, the trooper testified concerning appellant's high-speed flight for over eight minutes through several cities and townships in Lake County after he ordered appellant to pull over. At one point while appellant was fleeing southbound on Route 44, he pulled over to the side of the road. The trooper exited his cruiser and ordered appellant out of his truck. Instead of complying, appellant accelerated and continued his flight. Trooper Jefferies further testified that throughout the entire pursuit, his overhead rotating lights and siren were activated in attempts to get appellant to stop, all *Page 12 
to no avail. This evidence was sufficient to demonstrate that appellant willfully fled the trooper after receiving visible and audible signals from him to stop his truck.
 {¶ 35} Finally, the record demonstrates appellant's operation of his pickup exposed construction workers, Trooper Jefferies, residents, and other motorists in the path of the pursuit to a substantial risk of serious physical harm to their person or property. Appellant entered and sped on a closed road in a construction zone with construction workers in the area; he fled the trooper while "moderate traffic" was on the road at speeds well in excess of the speed limits; appellant's vehicle did not have functioning tail lights; appellant drove on the berm while merging traffic was attempting to exit Route 44; at one point during the pursuit, a motorist got between appellant's pickup and the trooper's cruiser; appellant went through red lights on Jackson Street and Heisley Road without stopping or attempting to slow down; he drove in a commercial area with his headlights off; he illegally passed several vehicles in violation of a double yellow line; he turned onto Hamilton Drive without giving a turn signal and by going through a stop sign. Trooper Jefferies also testified appellant swerved his vehicle, forced vehicles off the roadway on the ramp, and travelled left of center three times.
 {¶ 36} Appellant does not specifically dispute any of this evidence on appeal, but essentially argues the evidence presented by the state was legally insufficient. However, as outlined supra, the record demonstrates that sufficient evidence was presented on each of the essential elements of the offense charged.
 {¶ 37} As to the second issue under his assignment of error, appellant argues the verdict was against the manifest weight of the evidence. However, he gives no *Page 13 
specifics in terms of perceived conflicts in the evidence or otherwise in support of this argument.
 {¶ 38} Our thorough review of the entire record reveals there are no obvious conflicts in the evidence and the witnesses were sufficiently credible to sustain appellant's conviction. As such, we cannot conclude the trial court clearly lost its way and created a manifest miscarriage of justice in entering its verdict. Schlee, supra.
 {¶ 39} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur. *Page 1