[Cite as *State v. Prodonovich*, 2015-Ohio-3542.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-L-118** |
| NICHOLAS PRODONOVICH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000505.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Nicholas Prodonovich, appeals from the October 30, 2014 judgment of the Lake County Court of Common Pleas, sentencing him for grand theft following a jury trial. On appeal, appellant asserts that appellee, the state of Ohio, presented insufficient evidence to sustain his conviction and that his conviction is against the manifest weight of the evidence. For the reasons that follow, we affirm.

**{¶2}** On December 6, 2013, appellant was indicted by the Lake County Grand Jury on one count of grand theft, a felony of the fourth degree, in violation of R.C. 2913.02(A)(2).[1] Appellant was appointed counsel, entered a not guilty plea at his arraignment, and waived his right to a speedy trial.

**{¶3}** Thereafter, appellant filed a pro se motion to discharge his attorney. On August 15, 2014, the trial court, after thoroughly advising appellant of his rights, granted his motion. The court indicated appellant could represent himself in this case and also appointed a public defender as standby counsel if needed.

**{¶4}** A jury trial commenced on September 23, 2014. At trial, the state presented six witnesses and 14 exhibits. Appellant presented one witness and six exhibits.

**{¶5}** The testimony established that in August 2012, appellant attended a product demonstration at BCA Industries, Inc. ("BCA Inc."), a Wisconsin-based corporation that manufactures shredders for various recycling businesses. John Neuens, sales and marketing director for BCA Inc., testified for the state that he spoke with appellant regarding potential business opportunities in the tire shredding industry.

**{¶6}** Cassius Ralph Courtney, part-owner of Allegany Tire Chipping ("Allegany"), a Maryland corporation with offices in Pennsylvania, also involved in tire shredding and recycling, testified for the state that he met with appellant in October 2012. They discussed Allegany's potential purchase of tire shredding equipment. Mr. Courtney indicated appellant told him that appellant and/or his company, Green Tire LLC ("Green Tire"), would facilitate the purchase of a tire shredding machine from BCA Inc.

---

1. The indictment was later amended to correct a monetary amount and a date.

2

{¶7} Around the same time, Mr. Courtney traveled to Wisconsin to visit BCA Inc. He toured the facility, examined the type of equipment made, and met with company representatives, including Mr. Neuens. Mr. Courtney explained Allegany's needs. Mr. Neuens described what type of system BCA Inc. could provide. Appellant was scheduled to be at this meeting. However, appellant did not show up at BCA Inc. until after Mr. Courtney had left.

{¶8} Mr. Neuens met with appellant to go over the potential plan for Allegany. Appellant inquired about becoming a distributor for BCA Inc. Mr. Neuens told appellant that any finder's fee would not be paid until after a completed deal pursuant to a signed agreement.

{¶9} On October 19, 2012, a contractual agreement was entered into between Mr. Courtney, President of Allegany (as "Customer"), and Appellant, President of Green Tire (as "Seller"). (State's Exhibit 12). Green Tire agreed to arrange for the manufacture of three tire shredders. Allegany agreed to pay $750,000 over three installments. All payments were to be made from Allegany to Green Tire. The contract included a clause allowing Green Tire to keep 10 percent of the purchase price if the agreement terminated due to Allegany's failure to pay.

{¶10} Mr. Courtney subsequently told appellant that Allegany was going to have its "doors shut" due to nonpayment of rent by the end of that year. On December 7, 2012, Mr. Courtney gave appellant the first down payment, a $75,000 check made out to Green Tire, as a deposit on the equipment. (State's Exhibit 6). In turn, appellant wrote out a $50,000 check to Allegany's landlord, Greenville Rental Development Corporation, to pay Allegany's back rent. (State's Exhibit 6).

3

{¶11} Shortly thereafter, Mr. Courtney testified appellant told him that BCA Inc. wanted a $130,000 payment. Mr. Courtney and another co-signer, Joseph May, a consultant with Allegany, signed a check made out to "BCA Industries." (State's Exhibit 1). On December 25, 2012, appellant drove to Mr. Courtney's residence in Pennsylvania to pick up the check. Mr. Courtney indicated appellant requested the check be re-written in Green Tire's name. However, Mr. Courtney told appellant he could not change the check because doing so would require two signatures. Appellant took the check as written out to "BCA Industries," left Mr. Courtney's home, and returned to Ohio.

{¶12} The following day, Katie Zvolanek, an attorney with the Ohio Secretary of State's Office, testified for the state that appellant filed articles of incorporation to create a company called BCA Industries LLC ("BCA LLC"), listing himself as the new company's statutory agent. (State's Exhibit 2). Attorney Zvolanek stated that appellant paid a fee to expedite the filing which guaranteed an effective date of December 26, 2012. That same date, appellant filed documentation with the IRS to receive an employer identification number for BCA LLC, listing himself as the sole member. (State's Exhibit 3). On December 27, 2012, appellant received paperwork from the Ohio Secretary of State's Office approving the formation of BCA LLC.

{¶13} Joshua Randall, a universal banker with Huntington Bank, testified for the state that appellant opened checking and savings accounts for BCA LLC on December 27, 2012 at a branch office in Mentor, Ohio. (State's Exhibits 4, 5). Both accounts listed appellant as the sole signing authority. Mr. Randall indicated appellant deposited

4

a $130,000 check from Allegany to "BCA Industries," placing $125,000 in the checking account and $5,000 in the savings account. (State's Exhibits 4, 5).

{¶14} On January 1, 2013, appellant attempted to deliver a $100,000 check to BCA Inc. in person. (State's Exhibit 9). However, Mr. Neuens testified BCA Inc. would not accept a check and would need a wire transfer instead. Mr. Randall testified that two days later, appellant transferred $101,000 from BCA LLC's checking account into Green Tire's checking account. (State's Exhibit 7). Mr. Randall further indicated that appellant then transferred $100,000 from Green Tire's account to Landmark Credit Union, a Wisconsin credit union used by BCA Inc., that same date. (State's Exhibits 4, 6). Allegany received an invoice from Mr. Neuens reflecting the $100,000 payment. (State's Exhibit 10).

{¶15} Mr. Courtney stated that appellant continued to work with him and Allegany to secure financing for the remainder of the equipment. A potential agreement was negotiated through two lending companies. However, Mr. Courtney indicated the project fell through in February 2013 because the parties could not agree on final terms.

{¶16} Thereafter, Allegany alleged that appellant stole both the initial $75,000 check and the $130,000 check. Mr. May contacted the Pymatuning Police Department in Pennsylvania to report the theft of the $75,000 check written on December 7, 2012. In addition, Mr. May also contacted the Mentor Police Department ("MPD") in Ohio to report the theft of the $130,000 check written on December 25, 2012. Detective Michael Malainy with the MPD testified for the state that his department conducted an investigation and ultimately filed the instant charge against appellant.

{¶17} Mr. Neuens further testified regarding a March 18, 2013 letter sent by BCA Inc. to appellant terminating an October 2012 distribution agreement. BCA Inc. revoked Green Tire's ability to represent itself as a distributor for BCA Inc. or to represent itself as having a business relationship with BCA Inc. Appellant was ordered to return any unused BCA Inc. supplies including any letterhead, marketing, or sales materials.

{¶18} After the state rested, Attorney Mark Shearer testified for appellant that he and appellant have known each other for over 10 years. Attorney Shearer was hired by appellant to draft the contract between Allegany and Green Tire. Attorney Shearer referenced various exhibits submitted. Attorney Shearer stated he was not present when appellant received the $130,000 check from Allegany.

{¶19} Following trial, the jury returned a guilty verdict for grand theft as charged in the indictment. The court accepted the verdict and deferred sentencing. The court also referred the matter to the Adult Probation Department for a pre-sentence investigation and report and a victim impact statement.

{¶20} On October 6, 2014, appellant filed a pro se motion for new trial. The state filed a brief in opposition four days later. The trial court subsequently denied appellant's motion.

{¶21} On October 30, 2014, the trial court sentenced appellant to 17 months in prison, with 153 days of credit for time already served. The court ordered appellant to pay $30,000 in restitution. The court notified appellant that post-release control is optional up to three years. Appellant was further notified of all of his rights to appeal pursuant to Crim.R. 32(B) and the court appointed the public defender's office for

purposes of appeal. Appellant filed a timely appeal and raises the following two assignments of error:

**{¶22}** "[1.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty based on insufficient evidence.

**{¶23}** "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶24}** At the outset, we note that appellant takes no issue with his pro se representation at the jury trial or with the sentence handed down by the trial court. Rather, appellant alleges his conviction is not based on sufficient evidence and is against the manifest weight of the evidence.

**{¶25}** In his first assignment of error, appellant argues the guilty verdict is based on insufficient evidence.

**{¶26}** A review of the record reveals appellant never made a Crim.R. 29 motion for acquittal.

**{¶27}** "'Generally, a defendant's failure to raise an alleged error with the lower court acts to waive the error on appeal. However, the Ohio Supreme Court has held that a defendant's not guilty plea preserves an argument relating to the sufficiency of the evidence for appeal. *State v. Jones* (2001), 91 Ohio St.3d 335, 346, * * * (* * *). See, also, *State v. Carter* (2001), 64 Ohio St.3d 218, 223, * * * (* * *). Thus, appellant's failure to move for acquittal *did not* waive his sufficiency argument on appeal. See, e.g., *State v. Shadoan,* 4th Dist. No. 03CA764, 2004-Ohio-1756, at ¶16; *Mayfield Hts. v. Molk,* 8th Dist. No. 84703, 2005-Ohio-1176.' (Emphasis sic.)" (Parallel citations

omitted.) *State v. Heigley*, 11th Dist. Lake No. 2007-L-122, 2008-Ohio-1688, ¶23, quoting *State v. Perry*, 11th Dist. Lake No. 2004-L-077, 2005-Ohio-6894, ¶31.

{¶28} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

{¶29} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶30} "'"The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence*."'

{¶31} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

{¶32} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8

8

(July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

**{¶33}** "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra,* paragraph one of the syllabus.

**{¶34}** In this case, appellant maintains the evidence was insufficient because the state failed to show he used any fraudulent claims to induce his contracts with Allegany. Appellant asserts he showed a clear intent to perform and used the money he received to perform on the contracts. He alleges the state failed to prove the money was used beyond Allegany's consent or that he wrongfully intended to deprive Allegany of the money. It is appellant's position that he complied with the language of the contracts because he paid off Allegany's back rent and paid $100,000 to BCA Inc. for the tire shredder. Appellant further maintains the money he retained made up the amount he was permitted to keep as a service fee under the contract. Based on appellant's conviction and the record before us, we disagree with his assertions.

**{¶35}** Appellant was convicted for grand theft in violation of R.C. 2913.02(A)(2), which states: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond

the scope of the express or implied consent of the owner or person authorized to give consent[.]"

**{¶36}** The record reveals the state presented the greater amount of credible evidence that appellant purposefully acted to deprive Allegany of its money and knowingly obtained and exerted control over that money beyond the scope of Allegany's consent, thereby proving the elements of the offense beyond a reasonable doubt. *See* R.C. 2913.02(A)(2).

**{¶37}** Numerous physical evidence supports the state's position. As stated, on December 25, 2012, appellant drove from Lake County, Ohio to Pennsylvania to pick up a $130,000 check. The check was written from Allegany to "BCA Industries." Appellant requested the check be re-written in Green Tire's name. However, Mr. Courtney, part-owner of Allegany, told appellant he could not change the check because doing so would require two signatures. Appellant took the check as written and returned home.

**{¶38}** The next day, appellant drove to Columbus, Ohio to file articles of organization in order to establish a new company, BCA Industries LLC, i.e., a nearly identical name as Wisconsin-based corporation, BCA Industries, Inc. Attorney Zvolanek with the Ohio Secretary of State's Office testified for the state that appellant listed himself as the company's statutory agent and paid an in-person $300 fee in order to expedite the filing. That same day, appellant also obtained an employer identification number from the IRS for BCA LLC, listing himself as the sole member.

**{¶39}** Appellant continued taking steps to deprive Allegany of funds from the $130,000 check. Mr. Randall, a universal banker with Huntington Bank, testified for the state that appellant opened checking and savings accounts for BCA LLC on December

27, 2012. Both accounts listed appellant as the sole signing authority. Appellant immediately deposited portions of the $130,000 check, made out to "BCA Industries," into each account.

{¶40} On January 1, 2013, appellant attempted to deliver a $100,000 check to BCA Inc. in person. However, Mr. Neuens, sales and marketing director for BCA Inc., testified BCA Inc. would not accept a check because appellant's business was new to them and that they would need a wire transfer instead. Mr. Randall testified that two days later, appellant transferred $101,000 from BCA LLC's checking account into Green Tire's checking account. Appellant then transferred $100,000 from Green Tire's account to Landmark Credit Union, a Wisconsin credit union used by BCA Inc., that same date. Allegany received an invoice from Mr. Neuens reflecting the $100,000 payment.

{¶41} In addition, further testimonial evidence supports the state's position in this case. Mr. Courtney testified that appellant personally told him that BCA Inc. wanted a $130,000 payment. Mr. Courtney and his co-signer, Mr. May, wrote the check on December 25, 2012 based on appellant's representation. Mr. Courtney and Mr. May testified that the intent was for the check to be sent to BCA Inc. in Wisconsin to be used toward the purchase of tire shredding equipment. No one at Allegany knew of a BCA Industries LLC in Ohio. Mr. May stated that Allegany and BCA Inc. were the only parties involved. Mr. Courtney and Mr. May testified they had no intent for any portion of the money to go to appellant.

{¶42} Mr. Neuens testified that any money BCA Inc. received was intended to go toward building a tire shredding system for Allegany. Mr. Neuens and Mr. May

11

confirmed that the contract was intended to be between BCA Inc. and Allegany. Mr. Neuens emphasized to appellant that the final contract had to be between those two parties only. Mr. Neuens told appellant that he could receive a commission only after any deal was completed and only pursuant to a signed agreement, which is the company's traditional practice. Because the deal between BCA Inc. and Allegany was never completed, appellant was not entitled to any money.

{¶43} Mr. Neuens confronted appellant about the missing $30,000 as well as the prior check for $75,000. Appellant promised to send the money, which reveals he knew that Allegany intended all of the funds to reach BCA Inc. Appellant now claims, however, that he is entitled to keep a commission or service fee. The October 19, 2012 agreement between Allegany and Green Tire contains a clause entitling appellant to retain 10 percent of the tire shredder's purchase price if the deal falls through due to Allegany's non-payment. However, the deal had not yet fallen through between December 25 and 27, 2012, when appellant committed the offense. In fact, appellant himself admits that the parties worked on securing financing until February 2013. Therefore, at the time appellant took the foregoing steps, thereby committing grand theft, he did not have permission to keep any of Allegany's money.

{¶44} Pursuant to *Schlee, supra*, the state presented sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of grand theft in violation of R.C. 2913.02(A)(2) were proven.

{¶45} Appellant's first assignment of error is without merit.

{¶46} In his second assignment of error, appellant contends the guilty verdict is against the manifest weight of the evidence.

**{¶47}** This court stated in *Schlee, supra*, at *14-15:

**{¶48}** "'[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

**{¶49}** "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)

**{¶50}** A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶51}** With respect to the manifest weight of the evidence, the trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

**{¶52}** In reviewing and weighing all the evidence presented, we determine that a jury could reasonably conclude appellant was guilty of the charged offense. The jury heard all of the evidence presented by the state and from its six witnesses, as addressed above, establishing appellant's guilt for grand theft in violation of R.C. 2913.02(A)(2). The jury also heard the defense's theory and from its one witness that appellant did not purposefully act to deprive Allegany of its money and did not knowingly

13

obtain and exert control over that money beyond the scope of Allegany's consent. Appellant challenges the credibility of the state's witnesses, particularly the testimony of Mr. Courtney. However, the jury apparently placed great weight on and chose to believe the state's witnesses as opposed to appellant's. *DeHass, supra*, at paragraph one of the syllabus. We cannot say the jury clearly lost its way in finding appellant guilty of the charged offense. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

{¶53} Appellant's second assignment of error is without merit.

{¶54} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.